MARY E. GILBERT *vs.* ANNIE F. HAYWARD *et al.*

ANNIE F. HAYWARD *vs.* MARY E. GILBERT *et al.*

DECEMBER 15, 1914. ·

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)　Probate Law.　Reasons of Appeal.　Exceptions.*

Gen. Laws, 1909, cap. 311, § 1, par. 2, restricting an appellant from a decree of a probate court, in the Superior Court, to "his reasons of appeal specifically stated," prevents the raising on a bill of exceptions to the decision of the Superior Court, of a question going to the merits of the appeal not included in the reasons of appeal.

*(2)　Probate Law.　Claims Against Estates.　Alimony.*

Under the statutory scheme for the early settlement of estates of decedents, *all* claims against such estates are required to be filed in the office of the clerk of the probate court; therefore a claim for alimony by virtue of a decree in a divorce proceeding was properly filed as a claim against the estate of the respondent.

*(3)　Federal Decisions.*

Where no question is raised giving jurisdiction to the federal court, its decisions are not necessarily binding, but are given great weight as authority.

*(4)　Divorce.　Alimony.　Judgments.*

Gen. Stat. 1872, cap. 153, §§ 11, 12 and 18, provided for divorces from bed, board and future cohabitation and for assigning to the petitioner a separate maintenance out of the estate of the respondent and for the maintenance and support of the children. The court was empowered to alter and amend any decree for the maintenance and support of the children, but there was no express authority to modify a final decree for the maintenance of a wife.

*Held,* that a decree for "separate maintenance" without condition under the above statute had the character of finality until the parties became reconciled; and in so far as the authority to alter decrees for the maintenance of children was concerned there was no express provision or necessary implication in the statute that such alteration should be retroactive so as to deprive the decree of finality up to the time of the alteration.

*Held,* further, that while the right to amend the decree as to the payment of alimony was reserved by the words "until the further order of this court," until such order all sums accruing under the decree must be regarded as fixed and final and having the character of finality as record judgments, and as to them there was no authority in law or by reservation in the decree for its modification.

*(5)　Divorce.　Alimony.　Judgments.*

Where a respondent in a divorce proceeding for separate maintenance did not in his life time procure any alteration of a decree ordering the pay-

ment of a fixed weekly sum for the support and maintenance of the petitioner and the children of the parties, there was at the time of his death of record against him a final decree for all due and unpaid installments of alimony thereunder, and while the death of respondent would end the possibility of changing the decree it would not prevent a recovery for the amount accrued before that event.

(6) *Divorce. Alimony. Judgments. Collateral Attack.*

In a proceeding at law to enforce a decree for alimony it is not the subject of attack collaterally except on the question of the jurisdiction of the court making the decree.

(7) *Judgments. Statute of Limitations.*

Gen. Laws, 1909, cap. 284, § 4, provides that "all actions of debt, other than those in the preceding sections specified and all actions of covenant shall be commenced and sued within twenty years next after the cause of action shall accrue and not after."

*Held*, that while strictly a proceeding before a probate court to enforce a decree for the payment of alimony might not be an action of debt, it was in the nature of an action of debt on judgment, and the claim was not removed from the operation of the statute for the limitation of actions.

(8) *Conveyances in Fraud of Creditors. Estoppel. Waiver.*

Where a husband against whom a decree for alimony had been entered sub-sequently disclosed to the wife, the complainant, that he was the real owner of certain real estate standing in the names of third parties, and with this information, complainant, claiming to have yielded to the impor-tunities of respondents, joined with the husband, in release of her dower, in the conveyance by him of the property to the respondents,—the parties agreeing there was a consideration for the release of dower, but disagreeing as to its terms—fraud and undue influence being eliminated by the findings of fact, it must be held that the release of dower was the voluntary act of complainant and that she consented to the conveyance by her husband; and she is either estopped by her conduct from claiming that the con-veyances were fraudulent or has waived her right to do so.

Such waiver or estoppel applies to complainant individually as a creditor of her husband's estate, and while the estoppel might not apply in her capacity as administratrix of the estate, it appearing that the personal estate is largely in excess of all possible claims outside of her own, no reason appears for setting aside the conveyance.

(9) *Estoppel. Married Women.*

Where a married woman is by statute placed in the position of a *femme sole* as to her contractual rights, she is to that extent the subject of estoppel.

*Gilbert* v. *Hayward* appeal from decree of probate court, heard on exceptions of both parties from decision of Su-

perior Court. All exceptions overruled. *Hayward* v. *Gilbert* appeal from decree of Superior Court, heard on appeal of respondents. Appeal, except as to certain portions of decree, which are reversed, affirmed.

BAKER, J. These two causes have been heard together. The first is an appeal from a decree of the municipal court of the City of Providence entered the fifth day of December, A. D. 1913, allowing the claim of Annie F. Hayward against the estate of her deceased husband, Benjamin F. Hayward, in the sum of $28,148. From this decree Mary E. Gilbert, the only child of said Benjamin and said Annie, claimed an appeal. The appeal was heard in the Superior Court by Mr. Justice Doran without a jury and his decision was in favor of said Annie in the sum of $14,101. To this decision both parties filed exceptions and the cause has been heard before this court on bills of exception of both appellant and appellee.

The claim of Annie F. Hayward filed in the municipal court was for unpaid alimony awarded to her by a decree entered in the Supreme Court of this state, in Providence County, on the 6th day of June, 1874, granting her a divorce from the bed and board of her said husband and giving her the custody of their infant daughter, Mary Elizabeth Hayward, now the said Mary E. Gilbert.

The terms of the award of alimony were as follows: "And it is further ordered, adjudged and decreed that said Benjamin F. Hayward pay to the clerk of the Supreme Court, in the County of Providence, to and for the use of said Anna F. Hayward and for a support and maintenance to her and her said daughter the sum of eight dollars per week and at that rate per week payable on the first day of every month until further order of this court." The statute in referring to the allowance for the support of a wife in such cases uses the words "a separate maintenance" instead of the word "alimony," but inasmuch as this last term may be defined thus "alimony is the allowance which

a husband may be compelled to pay to his wife for her maintenance when she is living apart from him or has been divorced" (1 R. C. L. 864), for convenience the term alimony will be used in referring to the allowance granted by this decree.

The parties to the divorce were never reconciled. The decree was never modified. No payments were made under it by said Benjamin after the latter part of 1875. He died October 6, 1912, and thereafter said Annie was appointed administratrix on his estate. The amended claim of the appellee as filed in the municipal court covers the period included between October 1, 1878 and October 1, 1912, with interest on the several installments from the time they respectively became due. The decision of the Superior Court applies to the claim the statute of limitations relative to actions of debt on judgment and allows so much of the claim as accrued in the twenty years next preceding the death of said Benjamin, with interest on the monthly installments to May 26, 1914, the day before the decision was filed.

In the appeal from the decree of the municipal court the appellant stated eleven reasons of appeal, the first, second and eleventh of which were general, and the other eight specific, statements of error. The reasons of appeal were not amended or added to in the Superior Court. The appellant's bill of exceptions sets out in detail as the grounds of her exception to the decision of the Superior Court what are in substance the said reasons of appeal and all of them with one new ground or reason. This new ground of exception, numbered eleventh in the bill of exceptions, is that the appellee "is equitably estopped by her conduct (1) from claiming any arrears of alimony." We think this ground of exception is, upon the evidence, without merit. But further than that we are of the opinion that the provisions of paragraph "second" of Section 1 of Chapter 311 of the General Laws restricting an appellant from a decree of a court of probate in the Superior Court to "his reasons

of appeal specifically stated'' prevents the raising in this court for the first time of a question going to the merits of the appeal not included in the reasons of appeal. The first and second grounds of exception need no separate discussion as they are identical with the general statements of error in the reasons of appeal from the decree of the municipal court, and are covered by the other grounds of exception.

The third ground of exception raises the question of whether or not the decree in the divorce proceeding is such a judgment for debt that the wife could sue the husband thereon in law or equity, and constitutes a maintainable claim against the estate of Benjamin F. Hayward, and also the question of whether the enforcement of such a claim is not exclusively in the court granting the divorce, either in the divorce case itself or in a suit in equity auxiliary thereto. The last question is the simpler and may be disposed of first.

(2)     Section 3 of Chapter 314 of the General Laws provides that ''All persons having claims, including pending suits,  .  .  . and claims of the executor or administrator, against the estate of a deceased person, shall file statements of their claims in the office of the clerk of the probate court.'' The same section provides that claims not so filed within the time limited therefor shall be barred except in cases of ''accident, mistake and unforeseen cause.'' Section 10 of the same chapter provides that if ''an executor or administrator shall file a claim which he had against the testator or intestate in his lifetime, the probate court shall examine and determine such claim.'' This procedure was followed in the present case. From the operation of this statute no claims are specifically excepted, and taking into consideration the whole statutory scheme for the early settlement of estates of deceased persons in courts of probate, the reasonable and only conclusion is that *all* claims against such estates are required to be filed in the office of the clerk of said court. This is the necessary

initial step in their enforcement. *Lawton, Petr.*, 12 R. I. 210, is not precisely in point as an authority, as that case was under a different statute, but it is of value by way of analogy. We are of opinion therefore that the method of procedure for the enforcement of her claim followed by the appellee was the only correct one.

(3)   But irrespective of the mode of enforcement the important question is whether or not this decree in an action for divorce *a mensa et thoro* providing for future monthly payments of alimony until further order of the court creates or constitutes an enforceable debt. In the United States the weight of authority is that debt may be maintained on a decree either domestic or foreign for the payment of a specific sum of money unconnected with any condition. 5 Ency. Pl. & Pr. 1069 and cases cited; *Wagner* v. *Wagner*, 26 R. I. 27; 2 Black on Judgments, 2d Ed. Sec. 962; Freeman on Judgments, Sec. 434; *Page* v. *Page*, 189 Mass. at p. 87. There has been a diversity of decision as to whether an action would lie on a decree requiring payment of future installments of alimony. The question has usually arisen, when an action has been brought upon such a decree in a foreign jurisdiction, under Section 1 of Article IV of the Constitution of the United States, the "full faith and credit" section so-called. Decisions of the Supreme Court of the United States interpreting this section of the federal constitution are authoritative and binding upon all other courts of this country. When, as in the present case, no question is raised giving jurisdiction to the federal court, its decisions are not necessarily binding. Nevertheless from the recognized eminence and ability of this national court of last resort great weight as an authority is naturally given them by other courts. We will, therefore, consider these decisions in connection with the question now discussed.

(4)   *Barber* v. *Barber*, 62 U. S. (21 How.) 582, was decided in 1858. In that case the wife had obtained in 1847 in New York, where the parties then resided, divorce *a mensa et thoro*. The decree provided for the payment of alimony of

a definite amount computed to a fixed date and thereafter in stated quarterly installments. Without paying any alimony the husband left New York and went to Wisconsin where some years later the wife instituted proceedings in equity in the United States District Court for the recovery of arrears of alimony and obtained a decree for such arrears with interest, amounting to nearly six thousand dollars. The Supreme Court of the United States upheld the finding, saying on page 595: "Alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is." This was long regarded as a leading case. In *Arrington* v. *Arrington,* 127 N. C. 190, decided in 1900, a wife sought to enforce a decree for alimony obtained in 1879 in Illinois, requiring the payment semi-annually until further order of the court of stated amounts, one for her own support and the other for the support of her minor children. When the proceedings were instituted in North Carolina the arrears exceeded seven thousand dollars and the children were all of age. The decree was held to be entitled to full faith and credit,— *Barber* v. *Barber, supra,* being cited as an authority—and the plaintiff obtained judgment for so much due under said decree as was not barred by the statute of limitations of North Carolina. See, also, *Knapp* v. *Knapp,* 59 Fed. 641 (1893).

*Lynde* v. *Lynde,* 181 U. S. 183, was decided in 1901. In this case the wife obtained a decree in the Court of Chancery of New Jersey, in 1897, awarding her alimony in the sum of $7,840, to a day certain, $1,000 counsel fee and future alimony at $80 a week. She brought an action on this decree in the Supreme Court of New York and obtained judgment, including therein $4,400 accrued unpaid weekly alimony. In the Appellate Division the amount named was reduced by eliminating the sum of accrued weekly alimony, 41 N. Y. App. Div. 280, which judgment was affirmed by the Court of Appeals, 162 N.

Y. 405, and by the Supreme Court of the United States, *supra.* The latter court, on page 187, says: "The decree for the payment of $8,840 was for a fixed sum already due, and the judgment of the court below was properly restricted to that. The provision of the payment for alimony in the future was subject to the discretion of the Court of Chancery of New Jersey, which might at any time alter it, and was not a final judgment for a fixed sum." Thereafterwards some courts interpreting the decision in *Lynde* v. *Lynde,* *supra,* either as overruling *Barber* v. *Barber, supra,* or at least as inconsistent with it, held that an allowance in so far as it awards alimony to become due and payable periodically after entry of the decree is not within the protection of the full faith and credit clause of the federal constitution so as to require its enforcement in another state. *Page* v. *Page supra* (1905); *Israel* v. *Israel,* 148 Fed. Rep. 576 (1906); *Hunt* v. *Monroe,* 32 Utah, 428 (1907); *Sistare* v. *Sistare,* 80 Conn. 1 (1907). But in *Wagner* v. *Wagner, supra* (decided in 1904), this court held that an action of debt on judgment would lie on a decree for alimony payable in installments entered by the Superior Court in Massachusetts. This court while referring to the *Lynde* case as permitting an action at law on a decree cited *Barber* v. *Barber, supra,* as "one of the strongest cases in support of the enforcement of accruing alimony" and said "The objection that an allowance is subject to alteration by the court ordering it and so it cannot be regarded as a final or conclusive judgment has little if any weight as to an amount already due at the time of the suit."

The *Sistare* case was taken to the Supreme Court of the United States and is reported in 218 U. S. 1 (1910). In this case, in 1899, by judgment of the Supreme Court of New York, the wife was granted a separation from the bed and board of her husband and he was ordered to pay her weekly the sum of $22.50 for the support of herself and the maintenance and education of their minor child.

The Supreme Court of the United States in considering the question of "The application as a general rule of the full faith and credit clause in judgments for alimony as to past due installments" discussed at length the *Barber* and *Lynde* cases, saying on page 15: "When these two cases are considered together we think there is no inevitable and necessary conflict between them, and in any event if there be that *Lynde* v. *Lynde* must be restricted or qualified so as to cause it not to overrule the decision in the *Barber case.*" On page 16 the court says: "We think the conclusion is inevitable that the *Lynde* case cannot be held to have overruled the *Barber case*, and therefore that the two cases must be interpreted in harmony, one with the other, and that on so doing it results: First, that, generally speaking, where a decree is rendered for alimony and is made payable in future installments the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments."
. . . . "Second, that this general rule, however, does not obtain where by the law of the state in which a judgment for future alimony is rendered the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due." The court then considered the finality of the New York judgment as to past due installments for future alimony under the law of the State of New York.

Section 1771 of the New York Code of Civil Procedure in force in 1899, provided in separation proceedings for the making in the final judgment or by separate orders, "directions," for the custody and maintenance of the children of the marriage and the support of the wife; and further

that "The court may, by order upon the application of either party to the action, after due notice to the other . . . . at any time after final judgment annul, vary or modify such directions." In interpreting this language the Supreme Court says, on page 22: "It is certain that nothing in this language expressly gives power to revoke or modify an installment of alimony which had accrued prior to the making of an application to vary or modify, and every reasonable implication must be resorted to against the existence of such power in the absence of clear language manifesting an intention to confer it;" and after considering and discussing several decisions of New York courts and citing *Goodsell* v. *Goodsell*, 82 App. Div. 65, as deciding that the provisions of the New York Code giving power to modify an allowance of alimony could only have a prospective operation, the court held that the judgment of the New York court was absolute as to past due installments and as such entitled to full faith and credit in the courts of other states and so reversed the decision of the Supreme Court of Errors of Connecticut.

Under the laws of this state divorce proceedings are purely statutory. *Warren* v. *Warren*, 36 R. I. 167, at page 185 and cases there cited. The decree in this case was entered under Sections 11, 12 and 18 of Chapter 153 of the General Statutes of 1872. The two sections first referred to are as follows:

"Sec. 11. Divorces from bed, board, and future cohabitation, until the parties be reconciled, may be granted for any of the causes for which by law a divorce from the bond of marriage may be decreed, and for such other causes as may seem to require the same.

"Sec. 12. In case of such divorce, the court may assign to the petitioner a separate maintenance out of the estate or property of the husband or wife, as the case may be, in such manner, and of such amount, as they may think necessary or proper."

So much of Section 18 as is material is as follows:

"Sec. 18. The said court is empowered to regulate the custody, and provide for the education, maintenance, and support of the children . . . of all persons to whom a separate maintenance may be granted or who may petition for the same; . . . and to make all necessary orders and decrees concerning the same, and the same at any time to alter, amend, and annul for sufficient cause, after notice to the parties interested therein."

There is no express authority in the statute to modify a final decree for the maintenance of a wife. In *Sammis* v. *Medbury*, 14 R. I. 214, and *Sampson* v. *Sampson*, 16 R. I. 456, both divorces *a vinculo* it was held there was no authority to modify a final decree granting alimony. On like grounds, so far as the statutes are concerned, a decree for "separate maintenance" without condition would have the character of finality "until the parties be reconciled." In so far as the authority to alter decrees for the maintenance of children is concerned, there is no express provision or necessary implication in the statute that such alteration shall be retroactive in effect so as to deprive the decree of finality up to the time of the alteration. But in this case the right to amend the decree as to the payment of alimony is reserved by the words "until the further order of this court." By the terms of this decree the respondent was required to pay a sum certain on the first day of every month. Until further order the situation was the same as if on the first day of each month a judgment or decree for a definite sum were entered against the respondent. And these sums accruing monthly under the decree must by the rule of reason, as well as by the weight of authority, be regarded as fixed and final. The parties had had their day in court and were heard on the facts existing when the decree was entered. The reservation for possible future alterations provides for a change of conditions at a later time. To hold that the further order in alteration of the original decree could be retroactive would imply the power to increase the amount to be paid monthly by the respondent

for the period already passed, although he had fully complied with the original decree, or to reduce the installments already paid and thus require of the wife a repayment of portions of the sums already received by her under the decree. Such a construction would be wholly unreasonable. *Sistare* v. *Sistare*, 218 U. S. 23; *Goodsell* v. *Goodsell, supra,*

(5) 70. It follows that under the decree for alimony now considered the monthly installments as they accrued had the character of finality as record judgments or decrees and that as to them there was no authority in law or by reservation in the decree itself for its modification. It follows also from the above that, inasmuch as Benjamin F. Hayward never in his lifetime sought or procured any alteration of the decree, at the time of his death there was of record against him a final decree for all due and unpaid installments of alimony thereunder. If he in his lifetime could secure no modification of the decree as to past due installments, there is no basis for such an alteration after his death at the instance of those interested in his estate. In *Wagner* v. *Wagner, supra,* it is expressly held that the possibility of changing the decree ended with the death of the husband. But his death does not prevent a recovery for the amount which accrued before that event. 1 R. C. L. 953; 2 L. R. A. (N. S.) 240 note; Anonymous, 12 Abb. New Cas. 160 and cases cited. The decree constitutes a claim against the estate of the deceased for whatever may be shown to be due thereunder. *Wagner* v. *Wagner, supra; Martin* v. *Thison's est.,* 153 Mich. 516; *Coffman* v. *Finney,* 65 Ohio St. 61; *McIlroy* v. *McIlroy,* 208 Mass. 458, 464. The third ground of exception is therefore not well taken.

(6) The fourth exception alleges a change of circumstances of the parties to the divorce in that the minor child named in the decree, the present appellant, became of age many years ago and was to some extent supported by her father during her minority; and second, that Annie F. Hayward was allowed after the decree of separation to engage in business as a trader and take the profits of the business.

As to the first point the ceasing by the mother to provide for the daughter and the latter's becoming of age furnished ground for an application by the husband to modify the decree. It is impossible to know whether or not the decree would have been modified on such an application. The weekly allowance was so moderate it cannot be positively assumed that under the conditions ten years later this sum would be any more than the court would then have allowed the wife for her own support. But the decree was not modified and no application for modification was ever made. It is needless to say that even a good ground therefor does not *ipso facto* effect the modification of a decree. See *McIlroy* v. *McIlroy, supra,* 463, 464. But, furthermore, this is a proceeding at law to enforce a decree. The decree is not the subject of attack collaterally except on the question of the jurisdiction of the court making the decree for alimony, which question is not raised here.

In *Arrington* v. *Arrington, supra,* the situation was similar. Divorce had been decreed accompanied by a grant to the wife of two separate semi-annual allowances, one for the support of herself, the other for the support of minor children. When the decree was sued upon the children had attained their majority. The decree had not been altered. In her action upon the decree the wife was permitted to recover the sums allowed by it for the support of herself and of her children up to the date of the writ. The first point under this exception is therefore not well taken. And we think there is no merit in the second point. The evidence discloses that after her husband failed to pay for her maintenance the complainant undertook dressmaking in order to support herself and her child, taking a shop and employing helpers. This is far from constituting her a "trader" under the statute then in force. But if she were, it is impossible to see, as her earnings were her own, how her praiseworthy efforts in this direction could serve to relieve her husband or his estate from liability under the decree.

The fifth ground of exception is that the remedy to enforce said decree equitably terminated before the death of said Benjamin F. Hayward and if not before ended upon his death. Exactly what this signifies is not apparent as it was not argued, or considered in appellant's brief by itself or apart from the next four grounds of exception, and it is therefore overruled. It has, in fact, been disposed of in the consideration of the foregoing grounds of exception.

The sixth ground of exception is that Annie F. Hayward was guilty of such laches in the enforcement of her claim for alimony as not now entitling her to the aid of the court in its enforcement; the seventh ground is that her claim is barred by presumption of payment and settlement arising from her negligence to prosecute the same; the eighth ground is that the claim is barred by acquiescence in its non-payment, if non-payment there was; and the ninth ground is that there was an accord and satisfaction between said Annie F. Hayward and Benjamin F. Hayward which embraced said alimony. Without discussing the evidence in detail on which the appellant bases these five grounds of exception it is enough to say that not one of them is sufficiently sustained or established and they are all overruled.

In the decision of Mr. Justice Doran he allowed the appellee to recover for installments of alimony for the twenty years prior to the death of Mr. Hayward and held all installments becoming due before October, 1892, and then remaining unpaid to be barred by the statute of limitations as found in Section 4 of Chapter 284 of the General Laws. To this decision the appellee excepted.

(7) Said Section 4 is as follows: "Sec. 4. All actions of debt other than those in the preceding sections specified, and all actions of covenant, shall be commenced and sued within twenty years next after the cause of action shall accrue, and not after."

This court in *Wagner* v. *Wagner*, *supra*, held an action of debt on judgment to be an appropriate remedy to enforce a decree for the payment of alimony payable in in-

stallments. See, also, for a general discussion of the subject 5 Ency. Pl. & Pr. 1069. In a strict and technical sense a proceeding before a probate court to enforce a decree for the payment of money may not be an action of debt. But used in a comprehensive sense the term "action" is applicable to any form of proceeding "given by law for the recovery of that which is one's due." 1 Ency. Pl. & Pr. 110; 1 Words & Phrases, 128. This is a proceeding in the nature of a debt on judgment. It cannot reasonably be supposed that the General Assembly in requiring all persons as the first step in their enforcement to file their claims against an estate of a decedent in the office of the probate clerk and thus substituting a special mode of procedure for the customary actions at common law intended to take these claims out from the operation of the statute for the limitation of actions. In *Mason* v. *Taft,* 23 R. I. 388, it was held that in the allowance of claims by commissioners upon insolvent estates of deceased persons any defence, including the statute of limitations, which might have been pleaded in law by the decedent in his lifetime, was available against the allowance of such claims. If such defences are available before commissioners appointed by a probate court they are clearly available before the court itself, and in the subsequent travel of the case. See, also, *Arrington* v. *Arrington, supra, Knapp* v. *Knapp,* 134 Mass. 353, 356.

The cases cited in appellee's brief as to the statute of limitations in relation to suits in equity are not in point as this is a proceeding in law. The claim that Section 7 of Chapter 284 of the General Laws, which prevents the running of the statute while the cause of action is fraudulently concealed, applies in his case is not correct. The evidence here tends to show the fraudulent concealing of property, not the fraudulent concealing of a cause of action. The exceptions are therefore all overruled in the cause entitled *Mary E. Gilbert* v. *Annie F. Hayward et al.,* and said cause is remitted to the Superior Court for the entry of a decree and for subsequent proceedings in accordance with the decision of said justice of the Superior Court.

*Annie F. Hayward* v. *Mary E. Gilbert et al., Equity No. 289,* is a bill in equity brought by the complainant in her capacity as administratrix on the estate of her late husband and as creditor of said estate against said Mary E. Gilbert and her husband, Charles A. Gilbert. Under it she seeks to have certain property in the hands of the respondents declared assets of the estate of the deceased and also seeks to have certain alleged conveyances of lands and gifts of money and other personal property to the respondents by the said Benjamin F. Hayward declared to be null and void and ordered to be set aside on the ground that said alleged conveyances and gifts were not complete by delivery before the death of said Benjamin and if they were so complete that they were in fraud of the rights of complainant as a creditor of' said Benjamin under the decree awarding her alimony referred to and considered in the case of *Gilbert* v. *Hayward, supra.* She charges in substance that her husband from the time she commenced her divorce proceedings up to the date of his death for the purpose of defeating her claim for alimony successfully covered up and concealed by various devices his interest in his then owned real estate, in his stock in trade, and later in three certain parcels of real estate situate respectively on Carpenter Street, Foster Street and the Oaklawn Plat, all in Providence; also in certain deposits kept in the names of himself and daughter and in certain sums of money loaned by said Benjamin to said respondents and evidenced by promissory notes, the amount of which deposits and notes were not known to the complainant. The complainant admits in her bill that in 1905 she first learned of the ownership of said three parcels of real estate by her husband and understood that they stood on the land records in the name of his brother, James. She alleges that her husband and the respondents, with whom she then lived, by fraud and undue influence induced her to join with her husband, in release of her dower, in executing deeds conveying this real estate without consideration to her said daughter and that the respondents

then promised in consideration of her release of dower to give her one-half of said estates, but she further alleges that said deeds were never delivered.

The respondents deny any indebtedness to said Benjamin on their part; disclaim any knowledge of his possessing considerable sums of money or of his attempt to conceal his property; deny all fraud and undue influence in obtaining the complainant's release of dower in said real estate and any promise to give the complainant one-half of said estates or other interest therein, but admit that said release of dower was made in consideration of the promise of the respondents to support the complainant during her natural life. They allege that said deeds were delivered in the lifetime of said Benjamin. They say further that complainant is estopped from maintaining her bill as regards said real estate by her coöperation in the conveyance thereof; that she has been guilty of laches in collecting her said alimony; that there was accord and satisfaction between said Benjamin and the complainant as to said alimony and that she has no valid claim against the estate of said Benjamin. Issues of fact were framed, and the evidence taken in the case is before us.

The witnesses and testimony are essentially the same as in the *Gilbert-Hayward case.*

Upon the important issues of the case the Presiding Justice found that Benjamin F. Hayward concealed his interest in the three parcels of real estate in question for the purpose of defeating complainant's claim for alimony; that he practiced similar concealment for the same reason with respect to the deposits kept in the names of himself and his daughter; also as to the sums loaned to his son-in-law on mortgage; "also as to the money left by him upon deposit at his death and used subsequently by the respondents."

As to the release of dower by the complainant he finds that it was not obtained by fraud and undue influence. He also finds that the complainant was "not guilty of such laches in enforcing her claim as should deprive her of

aid of a court of equity," and that the evidence of accord and satisfaction is insufficient. As to the delivery of the deeds of said real estate he says: "While there may be some doubt upon the question of the delivery of the deeds themselves we are not prepared to find that they were not delivered." The burden being upon the complainant to show non-delivery, the finding is against her on this point and in effect, so far as this case is concerned, is that there was delivery.

We are of the opinion that the Presiding Justice could upon the evidence properly make these findings. The question of estoppel is not directly passed on, however. The entry of a decree setting aside the conveyances of said real estate does so inferentially. The finding that Benjamin F. Hayward concealed his interest in the real estate for the purpose of defeating the claim for alimony strictly applies to the situation existing up to 1905, when he disclosed to his wife that he was the real owner of this real estate, although two of the parcels were of record as the property of his brother, James, who had died in 1904, and the other in the name of a third person. Upon receiving this information the complainant had the opportunity presented for seeking relief in equity by treating this real estate as held in trust for said Benjamin by the persons having the legal title thereto. 14 Am. & Eng. Ency. L. 262-264. She testifies that after being thus informed upon the importunity of the respondents she was induced to join with her husband in release of her dower in the conveyance by him of this real estate to their daughter; also that she was then living with the respondents and "wanted to do everything she could," and that the consideration for this release of dower was the promise of the respondents that she should have half of this real estate when it came into their control. On the other hand they testify that the consideration was their promise to support her for life. They all agree that the release was made for a consideration, but disagree as to its terms. The evidence

shows that Mr. Hayward had, prior to the execution of these deeds, declared to the respondents, and that this declaration had been told by them to the complainant, that if she did not release her dower "the property will stand in Jim Hayward's name." As a matter of fact, however, the deeds of this real estate to Benjamin F. Hayward, executed in 1889, were recorded in 1905, shortly before the execution of the deeds to the daughter. But this fact of their being of record was not then known to either of the parties to this suit.

It having been found that the complainant was not induced to sign the deeds to her daughter by fraud or undue influence, it must be held that her release of dower was her voluntary act and also that she consented to the conveyance by her husband of his interest in this real estate. Under the statutes in force in 1905 a married woman as to her contractual rights was practically *femme sole* and to that extent she was the subject of estoppel. 11 A. & Eng. Ency. L. 396. We think therefore that she is either estopped by her conduct from claiming that these conveyances of real estate to her daughter were fraudulent and from having them set aside or has waived her right so to do. Strictly speaking, perhaps, her conduct constitutes waiver rather than estoppel, which terms though sometimes loosely used interchangeably are not identical in meaning. "A waiver arises by the intentional relinquishment of a right by a person or party or by his neglect to insist upon his right at the proper time." *Metcalf* v. *Phenix Ins. Co.* 21 R. I. 307, 309. This estoppel or waiver is certainly true as to her individually as a creditor of her husband's estate and if the husband's deed is valid, she is clearly estopped to deny her release of dower. Bigelow on Estoppel, 439; *Stearns* v. *Swift*, 8 Pick. 532. Perhaps she is not so estopped in her capacity as administratrix (16 Cyc. 712); but there is no suggestion of any other claims of creditors, at least in any considerable amount, and inasmuch as it appears that the personal estate is very largely in excess of all

possible claims against her husband's estate outside of her own, and as also under the laws of the state the debts of a decedent intestate are to be paid out of the personal estate until it is exhausted before resort can be had for that purpose to the real estate, there is no reason apparent why the conveyances of real estate by Benjamin F. Hayward to Mary E. Gilbert should be set aside. As to this real estate, therefore, the complainant should be left to the obtaining of such relief as she may be entitled to under the agreement in accordance with which the release of dower was made.

As to the certificates of deposit in the Rhode Island Hospital Trust Company and the Industrial Trust Company, the deposits in the Providence Institution for Savings and Citizens Savings Bank, the sums of $1,800 and $1,400 lent to one or both of the respondents by said Benjamin F. Hayward and secured by unrecorded mortgages on the land of the respondent, Charles A. Gilbert, together with all other sums of money of the estate of said Benjamin which have come into the possession of these respondents, amounting in all as set forth in the decree of the Superior Court to approximately $14,000, so much of said decree as requires these sums to be paid over to the complainant with interest is approved. So far as any attempted transfer to his daughter by the decedent of his personal estate or any part thereof was incomplete and ineffectual, it of course belongs to and is a portion of his estate. In so far as such transfer was as to any portion of said personal estate, if any, formally complete and effectual, it is set aside as being in fraud of the complainant as a creditor. *Robinson v. McKenna*, 21 R. I. 117; *Tucker v. Denico*, 26 R. I. 560; 14 Am. & Eng. Ency. L. 264, 265. Accordingly so much of said decree of the Superior Court as declares the deeds from said Benjamin F. Hayward conveying said Foster Street and Oaklawn Plat estates null and void and requires their cancellation and as requires the sum of $3,000, being the proceeds of sale of the Carpenter Street estate,

and the rents and profits of said three estates which have come into the respondents' possession since the death of Benjamin F. Hayward, to be paid to the complainant is disapproved and reversed. Said sum of $3,000 is ordered to be paid to the respondent, Mary E. Gilbert. The decree appealed from except as herein disallowed and reversed is affirmed.

A form of decree may be presented to this court on the 28th day of December, 1914, at 10 o'clock A. M. modifying the decree appealed from in accordance with this opinion.

*Edwin C. Pierce*, for Mary E. Gilbert et al.

*Thomas L. Heffernan*, for Annie F. Hayward et al.