79 N.J. Super. 25 (1963)
190 A.2d 206
JOAN F. LAWRENCE, PLAINTIFF-APPELLANT,
v.
ARTHUR VINCENT LAWRENCE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1963.
Decided April 11, 1963.
*28 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Melvin Gittleman argued the cause for appellant (Messrs. Capone and Gittleman, attorneys; Mr. Harold H. Capone on the brief; Mr. Gittleman of counsel).
Mr. William J. O'Hagan argued the cause for respondent (Messrs. Stout and O'Hagan, attorneys; Mr. O'Hagan of counsel).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff appeals from a final judgment of the Chancery Division, dismissing her partition *29 complaint, adjudging her in contempt for violation of restraining orders entered on July 8, 1959 and on June 9, 1960, denying her request for a counsel fee in opposing the counterclaim, and taxing costs against her.
There is no cross-appeal by defendant from the trial court's dismissal of that portion of the counterclaim which sought to compel plaintiff to take all proper steps necessary to cause the dissolution and vacation of a Florida judgment of divorce obtained by her.
The facts are not in dispute. They are set forth in a written stipulation filed with the court. We find it unnecessary to set forth the stipulation verbatim, since some needless detail has been incorporated therein.
Plaintiff and defendant were lawfully married in New Jersey in 1948. In 1951 they became owners, as tenants by the entirety, of a one-family house located at 65 Battin Road, Fair Haven, New Jersey. The parties and their children made this house their home until June 1959, when plaintiff left and took the children with her. It is agreed that the premises are not capable of being actually partitioned.
On or about June 26, 1959 Mr. Lawrence instituted suit in our Chancery Division to restrain his wife from removing the children from New Jersey, from instituting any suit outside New Jersey, seeking dissolution of the marriage, and from instituting any proceedings outside New Jersey respecting the custody or control of the children. On June 26, 1959 she was restrained, until the further order of the court, from doing so. Pursuant to the direction of said order, a true copy thereof and of the complaint and affidavits was personally served on her at New Shrewsbury, New Jersey, on June 26, 1959. Thereafter, copies of the summons and complaint were served upon her in Coral Gables, Florida, by the sheriff of Dade County, Florida.
Mrs. Lawrence filed no answer and took no steps with reference to her husband's injunction suit in our Chancery Division. The Clerk entered a default on the husband's request. Thereafter, on June 9, 1960, she was permanently *30 restrained from removing the children from New Jersey and from instituting any suit outside New Jersey for the dissolution of the marriage.
Meanwhile, Mrs. Lawrence left New Jersey on June 29, 1959, took the three children with her to Florida, and she and they have resided there ever since.
On January 4, 1960 she instituted suit in Dade County, Florida, in which she sought a divorce, custody of the three children, and support from her husband. Mr. Lawrence filed in the Dade County court a paper entitled "Special Appearance and Motion to Dismiss for Lack of Jurisdiction," asserting therein that the Florida court lacked jurisdiction over the parties to the suit and over his person. He relied upon his pending action in New Jersey and the restraining order of July 8, 1959. The Florida court denied his motion and held that the paper entitled "Special Appearance" constituted a personal appearance. On May 10, 1960 the Florida court found that it had jurisdiction and granted a divorce a vinculo matrimonii in favor of Mrs. Lawrence. She was awarded full and complete custody of the children and he was ordered to pay $100 weekly for their support and another $100 weekly as permanent alimony to Mrs. Lawrence.
Defendant prosecuted an appeal from the Florida divorce judgment to the District Court of Appeal of Florida, Third District. In an opinion dated June 1, 1961 the Florida District Court of Appeal affirmed the judgment of divorce, found that it had jurisdiction so far as the residence was concerned, but that it did not have jurisdiction to enter a money decree against the defendant. Accordingly, the decree was reversed as to the payment requirements, and in the other respects it was affirmed. Defendant took no further appeal and it is stipulated that the time within which such appeal might have been taken has expired.
On July 19, 1960 plaintiff filed her complaint in the Superior Court, asking for partition of the Battin Road property and the usual incidental relief. She recited the 1951 conveyance to her and her then husband, the Florida divorce *31 of 1960, and claimed that by virtue thereof she and defendant each owned an undivided one-half interest in the premises. In his answer and counterclaim defendant pleaded that the marriage between him and plaintiff was still subsisting and that the Florida divorce was without force or effect because of the injunctive orders of our Chancery Division. By way of counterclaim Mr. Lawrence prayed for an order (a) adjudging plaintiff in contempt for disobedience of the orders made on July 8, 1959 and on June 9, 1960; (b) directing her to take all proper steps necessary to cause the dissolution and vacation of the Florida judgments; and (c) restraining her from proceeding with a suit in the Superior Court in which she sought a judgment against him for $1400 founded upon the Florida judgment.
The parties have stipulated that plaintiff's suit in the Superior Court to recover the said $1400 was dismissed with prejudice on July 13, 1961. Therefore, we are not concerned with this item.
The Chancery Division dismissed the partition action on the sole ground that plaintiff, having willfully proceeded in the courts of Florida in violation of the injunctive orders issued by our court, may not now invoke this court's aid. As the trial judge put it, "Her hands are unclean and there is no reason why this court, having been slapped on one cheek should now turn the other." As to the counterclaim, the Chancery Division held that plaintiff was in contempt for her willful disobedience of the restraining orders. Punishment for the contempt was made subject to further motion. Insofar as the counterclaim sought an order directing plaintiff to take all proper steps necessary to cause the dissolution and vacation of the Florida judgments, the trial court declined to grant this demand.
The trial judge noted in his opinion that "before plaintiff will obtain any relief she must cleanse her hands by complying with the orders of this court heretofore entered." When plaintiff's attorney wrote for a clarification, the trial judge replied,
*32 "Whatever orders of the court were entered heretofore should be complied with by Mrs. Lawrence before she can come into this court and invoke its aid. She should purge herself of her contempt before the court gives her relief."
Plaintiff's Florida divorce decree must be given full faith and credit. U.S. Const. Art. IV, § 1. The issue of jurisdiction was specifically raised in the Florida courts, both trial and appellate, and the Florida court's determination as to this issue is res adjudicata. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429 (1948); Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 1097, 92 L.Ed. 1451 (1948); "Divorce Jurisdiction and Recognition of Divorce Decrees  A Comparative Study," 65 Harv. L. Rev. 193, 216. New Jersey is bound to give full faith and credit to divorce decrees of other states in instances where the courts of other states have made jurisdictional findings of domicile after proceedings in which both parties have participated. Schlemm v. Schlemm, 31 N.J. 557 (1960); Hudson v. Hudson, 69 N.J. Super. 128 (Ch. Div. 1961), affirmed 36 N.J. 549 (1962).
The trial court impliedly recognized the validity of the Florida divorce when it dismissed that portion of the counterclaim which asked for an order directing plaintiff to take the necessary steps to cause its vacation. There was no finding by our Chancery Division that the Florida court lacked jurisdiction or that its judgment of divorce was invalid. We conclude, therefore, that the Florida decree severed the marital bond and that plaintiff and defendant are no longer husband and wife.
During coverture, neither spouse has a right to the partition of an estate held by the husband and wife as tenants by the entirety. However, "a divorce terminates an estate by the entirety and creates a tenancy in common, with respect to which a partition may be had." Gery v. Gery, 113 N.J. Eq. 59, 65 (E. & A. 1933). Defendant does not dispute that legal consequence of a valid decree of absolute divorce. He contended only that the Florida decree was of no legal force *33 or effect because the Florida court lacked jurisdiction. A tenancy by the entirety can exist only so long as the co-owners are lawfully husband and wife. Destruction of the marital status, as in this case, automatically, by operation of law, converts the tenancy by the entirety into a tenancy in common. Baker v. Kennerup, 102 N.J. Eq. 367 (Ch. 1928); Sbarbaro v. Sbarbaro, 88 N.J. Eq. 101 (Ch. 1917). Inherent in the latter is the right to ask for partition.
The legally operative effect of a valid foreign judgment of divorce upon the title to lands in New Jersey was recognized by our Supreme Court in Peff v. Peff, 2 N.J. 513, 524 (1949). In that case, the husband obtained a valid Nevada divorce. It was held that this divorce terminated any inchoate right of dower which the wife might otherwise have had in the husband's lands in New Jersey. The court said:
"It is the accepted rule that a valid divorce from the bonds of matrimony, for the fault of either party, will bar dower rights, whether such divorce is procured in the local court or the court of a foreign jurisdiction, unless its effect in this regard is restrained by statute, and there is no statutory restraint in this state." (at p. 524)
So, too, a valid foreign divorce puts an end to a tenancy by the entirety, whose continued existence depends upon the marital status. 26 Am. Jur. (1940), § 117, pp. 743-744.
We are mindful of the ultimate right of each state to determine the title to land within its borders and to resolve property rights subject to its in rem jurisdiction. There is substantial authority that this right may not be impaired by the judgment of a sister state, even though the foreign judgment is based upon in personam jurisdiction. The constitutional compulsion of recognizing the validity of a foreign divorce, as severing the marital bond, does not foreclose a state from resolving property rights located within its confines according to its own law and its own considered concepts of justice and equity. Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909); Estin v. Estin, 334 U.S. 541, 68 S.Ct. *34 1213, 92 L.Ed. 1561 (1947); Vanderbilt v. Vanderbilt, 354 U.S. 416 (1957); Bullock v. Bullock, 52 N.J. Eq. 561, 27 L.R.A. 213 (E. & A. 1894); Clouse v. Clouse, 185 Tenn. 666, 207 S.W.2d 576 (Sup. Ct. 1948). See, too, 1 American Law of Property (1952), § 5.36, p. 707. But there is no special circumstance in the instant case which warrants any departure from the established rule in our State or requires any conclusion other than that normally reached, to wit, plaintiff's valid divorce converted the tenancy by the entirety into a tenancy in common.
Again, though unexpressed, there was recognition by the trial court of plaintiff's property rights as a tenant in common in the subject realty. There was no declaration of any contrary rule so far as plaintiff's substantive rights were concerned. There was merely a temporary withholding of the equitable remedy of partition of the realty, a remedy which would have normally been granted as a matter of course. This pro tempore denial of the relief sought was grounded upon the trial court's finding that plaintiff did not come into equity with "clean hands," solely because of her disobedience of the court's previously issued restraining orders. As the trial judge expressed it,
"She should purge herself of her contempt before the court gives her relief."
The trial court made no specification as to how plaintiff could purge herself of contempt before partition of the realty would be ordered. It properly denied defendant's demand that she take the necessary steps to vacate the Florida decree of divorce. It could not legally require her to vacate a judgment which it was constitutionally obliged to recognize. Her domiciliary status in Florida was res adjudicata and was not subject to collateral attack. While the trial judge referred to the "clean hands" doctrine as the reason for denying partition, it was really imposing a punishment on plaintiff as for a contempt, in addition to further punishment expressly reserved for future motion.
*35 None of our adjudicated cases in respect of unclean hands in a matrimonial litigation go so far as to bar the offending party from recourse to our courts to enforce a property right. The judgment of the trial court would leave this plaintiff the owner of a one-half undivided interest in the real estate in question but bereft of any legal sanctions for enforcing her right thereto as against the defendant. This strikes us as an excessive penalty for any wrong committed by plaintiff in the violation of the injunction.
Plaintiff's conduct did not warrant a denial of her legally established real property rights. As the trial judge aptly expressed it, "Equity will not repel all sinners." Thus, a wife who deserted her husband and was living in adultery was held entitled to an accounting of their jointly owned properties. Neubeck v. Neubeck, 94 N.J. Eq. 167, 170, 27 A.L.R. 172 (E. & A. 1922). See, too, 19 Am. Jur., Equity, sec. 473, p. 327. Willful disobedience of a valid court order merits punishment therefor. But the disobedient should not be barred from access to our courts for the enforcement of legitimate property rights within our State, when such property rights do not depend for their existence on the act of disobedience. Certainly, if personal property of plaintiff were contained in the former marital home and defendant wrongfully detained it, we would not deny plaintiff relief. See Lukaszewicz v. Lukaszewicz, 137 N.J. Eq. 383 (Ch. 1945). We observe no sound basis for denying an equivalent remedy when realty is involved. Plaintiff's tenancy in common in the subject property and her right to partition thereof arise by reason of a valid decree of divorce. Our court has adequate means for punishing contumacious conduct without closing its doors to the exercise of a legitimate property right.
This does not mean that Mrs. Lawrence is entirely free from an adjudication of contempt by our courts. She was restrained, while still a domiciliary of this State, from removing the children of the marriage from the State of New Jersey and from instituting proceedings in any jurisdiction outside New Jersey, not only seeking a dissolution of the *36 marriage, but also respecting the custody or control of the children. She never challenged the propriety of those restraining orders, took no appeal therefrom, and never applied to our courts to be relieved of the restraints. Regardless of our obligation to recognize the validity of her Florida divorce, her other conduct was contumacious, so far as the present record before us indicates.
As we said in Roselle v. Mayor and Council, etc., of Moonachie, 48 N.J. Super. 17, 25 (App. Div. 1957):
"If the person to whom a court order [injunction] is directed wishes to test its validity before complying with it, the appellate courts are open to him. Otherwise he must obey it. No other rule is compatible either with the dignity of the courts or the effective prosecution of their business."
See also In re Tiene, 17 N.J. 170, 178 (1954); Annotation 12 A.L.R.2d 1059, 1107-1114 (1950). The only exception to the foregoing rule is where the enjoining court is without jurisdiction. The decision in Brown v. Brown, 28 N.J. Super. 165 (App. Div. 1953), must be read in the light of these principles. The court there recognized them by stating (at p. 170) that "the initial power to restrain the Nevada proceedings itself depended on the existence of a New Jersey domicile in the husband [the party restrained]." In the present case plaintiff was a domiciliary of New Jersey at the time the restraint was entered, and if it was her position that the statute pursuant to which, in part, the injunction was granted, N.J.S. 2A:34-22, was no longer applicable to her once she had established a new domicile in Florida, the orderly processes of law called upon her to apply to the New Jersey court to vacate the restraint, not to ignore it by going ahead with her divorce action in Florida in contravention of the restraint.
It is not necessary for us here to examine the full implications of the question of the extent to which our statutory policy against inhabitants' leaving the State to obtain divorces on grounds not cognizable here (N.J.S. 2A:34-22) *37 must give way to the Full Faith and Credit clause or the ordinary right of persons freely to move from state to state and acquire domiciles where they will. These questions have not been adequately briefed or argued, and we can arrive at a disposition of this appeal without considering them. It suffices for present purposes to hold that plaintiff did not automatically exculpate herself from the consequences of violation of the prior New Jersey restraint, even with respect to the obtaining of the divorce, by her mere obtaining of a Florida divorce to which we are required to grant full faith and credit. We also express no opinion concerning the consequences of the violation of the prior restraint in connection with the removal of the children of the parties out of the State.
Thus, there may be further proceedings, to be prosecuted in the action wherein the prior restraint was entered, seeking to punish Mrs. Lawrence for contempt, as expressly reserved by the trial court, but such proceedings must be in accordance with the rules and the penalty, if any, may not exceed that fixed by law. See R.R. 4:87-1 et seq., and New Jersey Dept. of Health v. Roselle, 34 N.J. 331 (1961).
For the foregoing reasons, we reach the conclusion that the Chancery Division erred in dismissing plaintiff's action for partition. The judgment in that respect is reversed and the matter is remanded to the Chancery Division so that plaintiff may proceed with her partition suit.
We find no error in the trial court's denial of a counsel fee to plaintiff in defending the counterclaim. That matter rested in the sound discretion of the trial judge and we find no abuse of discretion, especially since defendant was partially successful on his counterclaim.
The imposition by the trial court of all costs upon plaintiff is reversed. There will be no costs by either party as against the other, either at the trial level or upon this appeal, as to the proceedings thus far conducted.
The judgment under review will be modified accordingly.