383 A.2d 592.

GRECIA C. BRITT *vs.* WILLIAM J. BRITT.

MARCH 15, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. The seeds of this litigation were sown when the petitioner, a resident of Ecuador, decided she wanted an American husband. To this end she placed an ad in an American publication, candidly stating her intention. The respondent answered the ad, and the mail-order nuptials took place in 1963. Residing in North Smithfield, the couple had three children in 8 years. But connubial bliss became just another memory in the Britt household when in 1973 the petitioner filed for divorce, alleging extreme cruelty on the part of her husband.

On January 31, 1975, at the conclusion of a somewhat extended trial, the trial justice in a bench decision granted the wife's petition for divorce on the ground of extreme cruelty. The wife was awarded custody of the three children and the exclusive use of the family homestead, its furniture, and effects. The husband was directed to pay the wife $100 a week for the support of the three children. In his decision the trial justice stated that the wife's use of the household was to be in lieu of alimony, but if she decided to take the children out of the United States, she was to surrender the household furnishings and effects to her husband and convey to him whatever interest she had in their real estate. The trial justice further ruled that should the wife leave the United States and take the children with her, the husband could either visit with them for 2 of the summer months or have the children spend the 2 months with him in Rhode Island, provided he supplied the transportation.

Sometime in July 1975 the wife filed a motion in which she

sought a modification of the January decision. The motion was based upon her contention that the court lacked the power to order a transfer of her real estate interest in the event she returned to Ecuador. On August 19, an interlocutory decree was entered, and incorporated within it were the original findings made by the trial justice in his January rescript. Thereafter, on September 11, a two-part motion was filed by the husband, in which he notified the court that the wife had taken the children and moved to Ecuador and asked that she be held in contempt because she had sold the household furniture. The motion also asked that the wife be ordered to convey her title to the real estate to the husband. Both spouses' motions were heard in the Family Court on September 12, and at the conclusion of the hearing the trial justice in another bench decision denied the motion to modify and, after finding the wife in contempt for disposing of the furniture, he remarked: "The house goes now to the husband. That was her free choice * * * ." Almost 4 months later, on January 9, 1976, an order was entered which, in its relevant part, ordered the wife to transfer her interest in the real estate to her spouse within the next 60 days and that, if she did not convey, commissioners would be appointed to effectuate the transfer.

The Britts' international tug-of-war brings before us a novel and most interesting issue, and this is whether the Family Court can order the wife to convey her legal interest in the real estate because of her relocation to Ecuador. For reasons that follow, we hold that the trial justice lacked the jurisdiction to order the conveyance of the wife's interest in the North Smithfield real estate.

We begin by noting that the Family Court is a statutory tribunal whose jurisdiction is limited to those powers expressly conferred upon it by G.L. 1956 (1969 Reenactment) 8-10-3. *Castellucci* v. *Castellucci*, 116 R.I. 101, 352 A.2d 640 (1976). The court's jurisdiction is entirely statutory and cannot be extended by implication. *Concannon* v. *Concannon*,

116 R.I. 323, 356 A.2d 487 (1976). As a statutory tribunal, it lacks general equitable powers and is powerless to act in a given matter unless specific authority therefor can be found in the Family Court Act. *Rogers v. Rogers*, 98 R.I. 263, 201 A.2d 140 (1964).

It is well settled that a divorce court, absent specific statutory authority, has no power to vest in one party the title to property of the other, or to order one party to convey or transfer certain property to the other. *Seniuta v. Seniuta*, 31 Ill. App. 3d 408, 421, 334 N.E.2d 261, 271 (1975); *McCraney v. McCraney*, 208 Miss. 105, 43 So. 2d 872 (1950); *Taylor v. Taylor*, 26 N.C. App. 592, 216 S.E.2d 737 (1975); *Smith v. Smith*, 264 S.C. 624, 631, 216 S.E.2d 541, 544 (1975); *Warne v. Warne*, 36 S.D. 573, 156 N.W. 60 (1916); Clark, *The Law of Domestic Relations*, §14.8 (1968). An analysis of Rhode Island's statutes insofar as they relate to the powers of the Family Court in divorce reveals that there is no provision which authorizes that court to compel a party to transfer his interest in real property to another.

Section 15-5-10 provides that where a petition for divorce from bed and board has been filed, the Family Court has the discretion to authorize a party to sell his or her own real estate free and clear of the dower or curtesy interest of the other. Section 15-5-6 states that when divorce is granted for fault on the part of the husband, the wife shall have dower as if the husband were dead. If the wife does not claim her dower within 6 months after the "absolute decree," the dower is deemed to be waived, "and the only relief of the wife shall be a claim for alimony chargeable upon the estate of the husband * * * ." Section 15-5-7 has a similar provision which preserves the husband's curtesy interest when divorce is granted for fault on the part of the wife. Section 15-5-8 provides:

> "Otherwise than as provided in §§15-5-6 and 15-5-7, neither husband nor wife, on divorce being granted, shall have any right in the estate of the other."

Nothing in this legislative scheme suggests the Family Court has the authority to compel a party to forfeit completely his or her interest in real porperty.

Section 8-10-3 sets forth the powers and duties of the Family Court. In its relevant portions the statute empowers the court to hear and decide

> "all petitions for divorce from the bond of marriage and from bed and board; all motions for allowance, alimony, support and custody of children, allowance of counsel and witness fees, and other matters arising out of petitions and motions relative to real and personal property in aid thereof, including, but not limited to, partitions, accountings, receiverships, sequestration of assets, resulting and constructive trust, impressions of trust, and such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce, bed and board and separate maintenance * * * ."

First, one notes that nothing in this statute explicitly grants to the Family Court the authority to compel a party to convey his or her interest in real estate. Other jurisdictions which have seen fit to grant their divorce courts this power have done so rather explicitly. *See e.g.,* Conn. Gen. Stat. Ann. §46-51 (1958); Ill. Rev. Stat. ch. 40, §§18, 19 (Supp. 1975). Second, the action taken by the trial justice cannot be viewed as an adjunct to the court's power to award alimony. Alimony is the allowance which a party may be compelled to pay to his or her spouse for their maintenance when they are living apart or after they have been divorced. *Gilbert* v. *Hayward,* 37 R.I. 303, 305-06, 92 A. 625, 627 (1914). As it is in the nature of a personal judgment against the husband, *Wilson* v. *Wilson,* 195 Va. 1060, 81 S.E.2d 605 (1954), specific property may be attached and sold only upon default in payment. *Glodis* v. *Glodis,* 115 R.I. 370, 346 A.2d 123 (1975).

Nor can this forfeiture be justified as within the court's power to partition real estate. A suit to partition involves the *division* of real estate between or among cotenants. General Laws 1956, chapter 15 of title 34; *Updike* v. *Adams,* 22 R.I. 432, 48 A. 384 (1901). If the property cannot be divided by metes and bounds, then it is sold, with each cotenant receiving his or her proportionate share of the proceeds. Section 34-15-18.

Arguably, authority for the action taken below may be found in the phrase "other matters arising out of petitions and motions relative to real and personal property * * * ." Section 8-10-3. But, as noted above, the powers of the Family Court are limited to those expressly conferred by statute and must be strictly construed. *Rogers* v. *Rogers.* We cannot extend these powers by implication or inference. *Concannon* v. *Concannon.* Thus, we cannot read into this general language a broad power on the part of the Family Court to impose a sanction which in actuality works a forfeiture of one's interest in his or her real estate.

Finally, even if the Family Court had ordered petitioner not to take the children to Ecuador and had found her in contempt for doing so, it could not have compelled a forfeiture of her property. Civil contempt is a remedial device designed to coerce compliance with judicial decrees or to compensate the nondefaulting party. *City of Pawtucket* v. *Council #70, AFSCME, Local 1012,* 116 R.I. 198, 353 A.2d 607 (1976). Contempt proceedings arising out of divorce decrees, although to a limited extent designed to preserve the integrity of court decrees, are primarily intended to coerce the contumacious party to make good his or her defaults under such orders. *Brown* v. *Brown,* 114 R.I. 117, 329 A.2d 200 (1974). Although contempt matters are committed to the sound discretion of the trial court, this court will review the terms of an order imposing a compensatory fine or confinement to assure they are reasonable. *Id.;*

*Ciallella* v. *Ciallella,* 81 R.I. 320, 326, 103 A.2d 77, 80 (1954).

The Family Court has the power to punish contempts by fine or imprisonment, or both. Sections 8-6-1, 8-10-38. Only in very limited circumstances may a contempt order be enforced by an injunction. *See Goldstein* v. *Goldstein,* 109 R.I. 428, 286 A.2d 589 (1972). In any case, the contempt power does not comprehend the power to deprive one of his property and convey it to another. *Deauville Associates, Inc.* v. *Eristavi-Tchitcherine,* 173 F.2d 745, 746 (5th Cir. 1949); *Day* v. *Schoreck,* 31 Ill. App. 3d 851, 334 N.E.2d 864 (1975); *Lawrence* v. *Lawrence,* 79 N.J. Super. 25, 35, 190 A.2d 206, 211 (1963); *In re Estate of Bailey,* 58 Wash. 2d 685, 695, 364 P.2d 539, 545 (1961); *Mitchell* v. *Watson,* 58 Wash. 2d 206, 214, 361 P.2d 744, 748 (1961).

In *Estate of Bailey,* for example, an heir refused to cooperate with the administrators of a decedent's estate. She was found in contempt for refusing to render an account and surrender certain documents and assets. The Supreme Court of Washington, in reversing a lower court's order that charged the heir's share of the estate some $25,000, which supposedly represented the increased costs of administration as a result of the heir's failure to cooperate, repeated an observation it had made earlier, to wit:

> " 'The contumacy of a party, disobeying an order of a court, may justify his punishment for contempt, but it does not justify the deprivation of his civil rights or the taking of his property and giving it to another.' " *In re Estate of Bailey,* 58 Wash. 2d at 695, 364 P.2d at 545, quoting *Mitchell* v. *Washington,* 58 Wash. 2d at 214, 361 P.2d at 748.

In short, nothing in the Rhode Island statutes expressly confers upon the Family Court the power to compel a party to forfeit or convey his or her legal interest in real property. Therefore, in the absence of such statutory authority, we

hold that the Family Court has no power to work a forfeiture so that the title to property is vested in another. Having found that the Family Court was powerless to order a forfeiture of the wife's real estate interests, we are left with the question of the timeliness of her appeal.

On several occasions we have stressed that since divorce proceedings follow the course of equity, the trial justice's decision should be embodied in a decree because equity speaks only through decrees. *Levada* v. *Levada,* 116 R.I. 600, 359 A.2d 701 (1976); *Lamarche* v. *Lamarche,* 108 R,I, 213, 273 A.2d 860 (1971); *Pukas* v. *Pukas,* 104 R.I. 542, 247 A.2d 427 (1968). The decree embodying the findings contained in the trial justice's January 1975 divorce decision was not entered until mid-August 1975. Her appeal was filed in late September, long after the 20-day appeal period had expired. The decree denying the modification motion and ordering the transfer of the wife's interest was not entered until January 9, 1976, and the record gets more befuddling because it contains another decree dated February 27, 1976 signed by another justice of the Family Court other than the trial justice. In this later decree the wife is "ordered to transfer to the respondent her interest in and to the real estate located at 30 Filion Drive, North Smithfield, Rhode Island within sixty (60) days of September 12, 1975."

Assuming arguendo that the wife's appeal is not timely, it is elemental that subject matter jurisdiction can be raised at any time by either party or by the court sua sponte. *Ryan* v. *DeMello,* 116 R.I. 264, 354 A.2d 734 (1976). In the *Ryan* case one of the petitioners was the paternal aunt of the respondent's 4-year-old daughter. The respondent was a widow, and the Ryans were asking the Family Court to award them custody of the child and the right to visit with her. Early in the litigation a decree had been entered awarding the Ryan's visitation rights. Later, the trial justice, on his own initiative, ruled that he had no jurisdiction to enter such an order. In *Ryan* the trial justice, after examining the perti-

nent statutes, found no basis for his previous order. And so, too, today we can find no authority for the forfeiture order entered in this case. Thus, we rule that so much of the decree of the Family Court which directs the wife to convey her interest in the litigants' real estate to her husband is a nullity.

This court has recognized that today's mobile society creates problems for a judicial tribunal such as the Family Court as it attempts to insure compliance with its orders. *Rymanowski* v. *Rymanowski*, 105 R.I. 89, 249 A.2d 407 (1969). Thanks to jet propulsion, Ecuador is now but a proverbial hop, skip and jump away from Rhode Island. We can appreciate the problem that confronted the trial justice as he framed his August 1975 order, but the hardships facing a North Smithfield husband, however great, cannot justify a court entertaining and passing upon a subject matter which is beyond its jurisdictional competence. *See Pennsylvania Railroad* v. *Pennsylvania Public Utility Commission*, 396, Pa. 34, 152 A.2d 422 (1959).

The wife's appeal is sustained, and the case is remitted to the Family Court.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Kenneth J. Macksoud,* for petitioner.

*F. Thomas O'Halloran,* for respondent.