The defendants were husband and wife at a time when they held two lots of land by the entirety. Subsequently, they were divorced, whereby each of them became seized of an equal undivided one-half interest in the land as tenant in common. 2Bish. Mar. D. § 1649 et seq.; 13 R.C.L. p. 1121; Butlar v.Butlar, 67 N.J. Eq. 136.
During their marriage the husband undertook to erect a building upon such land, but found that he was without $372.30 of the amount necessary to complete the building. It was thereupon agreed between him and his wife that if she would advance this sum toward the completion of the building that he would repay her. To secure the wife a mortgage was made and delivered to the complainant. This mortgage has been foreclosed, the property above referred to sold by the sheriff for $1,378.84, and out of that sum he has deducted his own charges and paid to the wife the principal of her debt and interest thereon, amounting in all to the sum of $483.42. The sheriff has deposited with the clerk of this court the sum of $550.22, which, it is conceded, should be supplemented by $76.23 now in the hands of the petitioner, the wife, so that there is a surplus of $626.45 to be divided between the defendants.
The mortgage was decreed a valid lien, for the sole and solitary reason that the husband had bound himself by a valid, express contract with his wife to pay it. The question to be resolved is whether or not the proceeds of the mortgage already paid to the wife should be charged wholly against the *Page 369 
share of the remaining fund to be allocated to the husband, or whether that fund should be equally divided between them, because the wife has already received the face of the mortgage of which she was the beneficial owner.
In a memorandum filed on behalf of the man it is feebly argued that the promise to repay to the woman was not enforceable at law, because made on a past consideration. The proofs before the master disclose no such situation. The man clearly testified that he promised to repay before the advances were made. It is true that under the insistent leading of his counsel he finally caught the cue and said that his promise was made after the moneys had been paid by the woman. Surely, it is not expected that the court will give effect to what amounts to the lawyer's desires rather than the witness' testimony. It must be borne in mind that my finding is that the man bound himself by a valid promise, made upon a sufficient consideration, that he would restore to the woman, who was then his wife, $372.30, with interest, without in any way affecting her right, title or interest in their joint real estate. In fact, it is my opinion that the decree makes that the law of the case.
On behalf of the husband, it is argued that the fund should be divided into two equal portions of $313.22 and one portion given to each of the defendants. The wife, on the other hand, maintains that she should receive one-half of the present fund and the other half which would have gone to her former husband (if it had not been for his express contract), so far as that amount will extend.
After deducting his fees and charges there remained in the hands of the sheriff $1,109.87, which, it seems to me, should have been deposited with the clerk. Now, if there were not the complicating circumstances of the man's contract to repay, each of the contesting parties would receive $554.93. If there now be deducted from his portion $483.42, representing the advance of $372.30, with interest, to the date of conveyance by the sheriff, it will leave a balance for the man of $71.51, and the remainder of the fund amounting to $1,038.35 should be paid to the woman. *Page 370 
By this method, which is the one always adopted upon partition, the same result is reached as that to which the special master came. Of course, this will be a great disappointment to the man, and I should be glad if some more satisfactory division could be made. It is true that he created the estate and that the lion's share of what the woman is to receive came as the result of his generosity to her when they were living together as man and wife; but it is entirely the result of his own voluntary action. If he had built the house entirely with his own means, upon land in which she had no interest other than her inchoate right of dower, and if he had then delivered to her a deed and paid the expense of the recording of the same, we would have no worse situation upon their subsequent falling out than was disclosed in the case of Kelso v. Kelso, 95 N.J. Eq. 544; affirmed, 96 N.J. Eq. 354,
where neither this court nor the court of errors and appeals was able to save from his own folly a man who had stripped himself, not of a few hundred dollars, but of a considerable estate representing the accumulation of a lifetime when he was approaching his seventieth year of age.
It is further argued that there was no gift by the man of the value of the improvement that he put into the joint estate. There is no need that there should have been any express gift to the other tenant, because it is elementary that the law supplies such a promise where improvements are made to property held as this land was. The peculiar relation existing between them differentiates this case from any where one coparcener is entitled to compensation for betterments or to an equitable partition.
It is further urged that if one-half of the remaining money of $313.22 is now paid to the woman, it will when added to the amount already properly received by her from the sheriff, equal the gross sum of $796.64, which is exactly $483.42 more than the man will receive, which would be $313.22. This difference would be exactly the amount the man promised to pay, together with accrued interest. The difficulty with this solution has already been noted. To state the matter with a different and more convenient set of figures, it may be put thus: If A and B are entitled to the payment of the sum of *Page 371 
$1,000 to be equally divided between them, and A borrows $250 from B upon a contract to repay him out of the one-half share in the $1,000 fund without interest, it is perfectly apparent that B would become entitled to $750 while A would only be entitled to $250. If the process should be followed that the man wishes to have adopted, B would first receive out of the $1,000 fund his claim of $250. Then the remaining $750 would be divided into two equal portions and A and B would each take $375. B would thus secure $625 out of the total fund. But inasmuch as he has suffered to the extent of $250 before the fund was paid and A has benefited to the like amount from B, to clearly see the reason underlying the master's report, it would be necessary to deduct from B's $625 the $250 which he had advanced to A and add it to A's $375, so that A will have profited by the transaction to the extent of $125 more than B. Otherwise, it may be expressed briefly by saying that to first deduct the debt from the entire sum and divide the balance remaining would be equivalent to compelling B to pay one-half of the debt which A is under a legal obligation to pay.
The exceptions should be overruled.