PIONEER COOPERAGE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4816. Promulgated August 19, 1929.

*A. S. Johnston*, Esq., and *Richard S. Doyle*, Esq., for the petitioner.

*L. A. Luce*, Esq., for the respondent.

OPINION.

MILLIKEN: Since respondent has not determined a deficiency for the year 1917 but has determined an overassessment, and such overassessment, so far as the record discloses, not resulting from the rejection of a claim in abatement, the Board is accordingly without jurisdiction as to that year and for that reason this appeal, in so far as that year is involved, is dismissed. *Cornelius Cotton Mills*, 4 B. T. A. 255.

There is but one question before us for decision, and that is the basis upon which petitioner's losses sustained by reason of storms and worms are to be computed. The pertinent parts of section 234 of the Revenue Act of 1918 read:

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \* \* \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise.

Section 202 of the same Act contains the following:

SEC. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

(2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203.

Petitioner's first contention is that the measure of its loss is the fair market value of the property at the time it was destroyed by storms and worms. It further contends that if this be not true, then the proper basis is the fair market value of the property on March 1, 1913. It also asserts that the provisions of section 202 (a) (1) (2) are not pertinent since they apply only to gain or loss arising "from the sale or other disposition of property * * * ."

Reserving decision on the last point, we pass to petitioner's major contention, which is that the measure of its loss is the fair market value of its timber when destroyed. In making this contention, petitioner seeks to draw a distinction between voluntary and involuntary losses, although no such distinction is to be found in section 234 (a) (4). That provision covers "losses" without distinction. It covers all losses, however incurred. To carry petitioner's contention to its logical conclusion would be quite disturbing to the taxpayers of the country. It would deny to them deductions for actual losses where their property had fallen in value. If petitioner's property had decreased in value instead of having increased, we seriously doubt whether it would persist in its present contention. Yet, if one's deductible loss is to be measured by the market value of property at the date of loss, when the property increases in value, by the same token it should be measured by the same standard when it has shrunken in value. To apply the rule contended for by petitioner would be to grant deductible losses only where the property had value when lost, and then only to the extent of its then present value, and thus disregard all questions of cost or value at date of acquisition. The result of this would be that there would be one basis for the computation of gain and another basis for the computation of loss. We can not acquiesce in any such rule.

Petitioner's position relative to section 202 is thus stated in the brief filed herein in its behalf:

The term "sale" can not apply to the loss of the timber in the present case, as there was no sale. The word "disposition" means "to dispose," which can only mean a transaction in which the taxpayer has voluntarily transferred his property, such as by barter or exchange. There has been no transfer, hence no disposition of this timber.

Again, a peculiar result would be reached if we applied petitioner's contention to a state of case other than the one here involved. Thus, if A and B acquired land at the same time and for the same cost and a public service corporation acquired the property of A by a voluntary sale and the property of B by condemnation, and each for the same price, the result would be that A would be taxable upon any gain he made, while B would escape taxation, for the reason that

as to him the transfer was involuntary, since, as contended, the basis for computing his gain would be the value at the date of condemnation, which would be the same as the amount received. The same would be equally true as to a deduction for losses, for the reason that gains and losses are correlative. It might well be said that condemnation is an involuntary sale and therefore falls within the statute and such it is. Petitioner's contention, however, goes to all involuntary gains and losses.

If petitioner's position is correct, then it is entitled to a loss equal to replacement value. In fact, it is so contended in the brief filed in its behalf, where it is argued:

> For instance, suppose a company purchased a ship in 1910 for $100,000; on March 1, 1913, it was worth $150,000; on January 1, 1918, it was worth $500,000; and it was wrecked in 1918, and was not covered by insurance. What has the company lost? The cost of replacement would be $500,000. Is that not the amount of the loss?

With respect to such basis, it has been the consistent holding of the Board that cost or value on March 1, 1913, is the proper basis for the computation of loss and therefore replacement value is not a factor to be considered. See *Samuel Greenbaum*, 8 B. T. A. 75; *George B. Friend*, 8 B. T. A. 712; *Joseph E. Hubinger*, 13 B. T. A. 960; *Fred Frazer*, 10 B. T. A. 409; and *Pelican Bay Lumber Co.*, 9 B. T. A. 1024, affirmed in *Pelican Bay Lumber Co.* v. *Blair*, 31 Fed. (2d) 15. See, also, *J. N. Camden*, 11 B. T. A. 232. In the last case Camden's stable was burned in 1922 and he thereby lost twenty blooded racing horses which he had raised and trained subsequent to March 1, 1913. The value placed upon these horses at the time of the fire was the amount of $150,000. Camden was denied any deduction on account of the loss of the horses, on the sole ground that he failed to prove their cost. This case involved the application of section 214 (a) (6) of the Revenue Act of 1921, which differs from section 234 (a) (4) of the Revenue Act of 1918 in that it provides as the basis for the computation of loss on property acquired prior to March 1, 1913, its value on that date, but contains no provision relative to property acquired subsequent to that date. In view of the absence of such provision, it was contended there as here that the loss should be measured by the value of the property when destroyed and that contention was denied.

By paragraph (4) of subdivision (a) of section 234, the right of a deduction for a loss is made dependent on whether the loss was compensated for by insurance or otherwise. These provisions can not be separated. The basis for computation of loss, which is correlative with gain, is the same, irrespective of whether or not compensation is received for the loss. If we eliminate for the time being the question of value on March 1, 1913, and if we substitute a cost as of

March 1, 1913, of $150,000 for the ship referred to in petitioner's example, above quoted, and also assume a recovery of insurance in the amount of $500,000 for the loss of the ship in 1918, and if we further assume that the ship was not replaced, then, according to petitioner's contention, no taxable gain was made, since the value of the ship when destroyed was equal to the amount of the insurance. This startling result is contrary to the concepts of Congress, of the courts, and of the Board. That Congress deemed such compensation taxable income is shown by the fact that in section 234 (a) (14) of the Revenue Act of 1921 it in effect provided that where compensation was received for property destroyed, stolen, or taken by condemnation, and where such compensation or part thereof was used for replacements, so much of the compensation so used might be deducted from gross income, and then made the paragraph applicable to such losses under prior revenue acts. This section is evidence of the fact that Congress deemed it necessary to provide this deduction in order to prevent the taxation of insurance or other compensation for property lost and used for replacement. Relative to this provision we said in *International Boiler Works Co.*, 3 B. T. A. 283:

* * * The provisions of section 234 (a) (14) are relief provisions by which a taxpayer may postpone the taxation of so much of the gain derived from an involuntary conversion as it used in replacement. * * *

In *Piedmont-Mt. Airy Guano Co.*, 3 B. T. A. 1009, we said:

That gain derived under a policy of insurance against the loss of a building by fire should enter into the computation of the gain or loss resulting therefrom may not be doubted, for, if the destruction of a taxpayer's property results in a gain by him through insurance, there is a taxable gain growing out of the ownership or use or interest in real or personal property. Under section 234 (a) (14) of the Revenue Act of 1921, however, relief is provided in the form of a deduction for taxpayers who expend the proceeds from such an involuntary conversion of property in replacing it with similar property.

To the same effect see *Fred Frazer; Pelican Bay Lumber Co.;* and *Pelican Bay Lumber Co.* v. *Blair*, all *supra*. In the latter case the property lost was acquired subsequent to March 1, 1913. There the Circuit Court of Appeals said:

If appellant had elected not to rebuild, there would have been no deductible loss, but, to the contrary, a taxable gain of $67,917.49; that being the difference between the depreciated cost and the insurance collected, plus the salvage of $1,267.68. In other words, the transaction would in effect have amounted to a sale of property costing $98,202.83 at a profit of $67,917.49.

Again, speaking with reference to section 234 (a) (14) of the Revenue Act of 1921, the court said:

Manifestly Congress considered an excess of insurance over original cost as a gain and in case of reinvestment a portion of this gain, which otherwise would be taxable as such, is offset by the authorized deduction. In the instant case the entire amount of the insurance collected was reinvested and hence the Commissioner taxed no gain against the appellant.

It seems clear, upon both reason and authority, that petitioner's deduction for its loss by fire, storm, and worms should not be measured by the value of its timber when destroyed.

Since it is apparent that petitioner has suffered a deductible loss, and since the measure of this loss for income-tax purposes is not the value of the property at the date of destruction, there remain but two other bases upon which the amount of the loss can be computed, and these are (1) the cost of the timber when purchased, or (2) its fair market value on March 1, 1913. Here, the latter value of the timber is in excess of its cost. The question presented is whether the loss suffered is the difference between the fair market value of the timber when destroyed and what it actually cost, or is it the difference between such value at date of destruction and what petitioner could have obtained but did not obtain for it on March 1, 1913. To put it another way, is petitioner entitled to take as a loss an amount, part of which cost him nothing but which is in the nature of unrealized income, or only that amount which it is actually out of pocket? On this point we are of opinion that the question is foreclosed by the decisions of the Supreme Court in *United States* v. *Flannery*, 268 U. S. 98, and *McCaughn* v. *Ludington*, 268 U. S. 106. It is urged by petitioner that these cases have no application since they had for construction section 202 of the Revenue Act of 1918, above quoted, which, as contended, applies only to a " sale or other disposition of property * * *." It is argued that a loss by storm is neither a sale nor a disposition within the meaning of the Act. We do not deem it necessary to decide this point, although the Circuit Court of Appeals in *Pelican Bay Lumber Co.* v. *Blair*, *supra*, seems to have held that if insurance was collected the transaction was in the nature of a sale. It appears to be petitioner's view that the *Flannery* and *Ludington* cases literally applied the particular words of section 202 when in fact the court refused to so apply that section. The contention of appellees in the *Flannery* case is thus stated in the opinion:

The executors contend, on the other hand, that section 202 (a) established the market value of such property on March 1, 1913, as the sole basis for ascertaining the loss sustained, without regard to its actual cost, and that if such market value was higher than the sale price, this conclusively determined that there had been a deductible " loss " in the transaction, and fixed the amount thereof at the difference between the market value on that date and the sale price.

Here, we have the contention that the statute should be literally applied. The court refused to hold that the statutory basis of " fair market price or value " of the property on March 1, 1913, was the only basis. It held that Flannery, who had purchased prior to March 1, 1913, stock for which he paid (in these examples we use

round numbers) less than $95,000 and which on March 1, 1913, had a market value of $116,000, and sold it in 1919 for $95,000, suffered no deductible loss. In the *Ludington* case the court held that where the taxpayer in 1919 sold stock purchased prior to March 1, 1913, for $3,800, which amount was $28,000 less than cost and $33,000 less than its value on March 1, 1913, the loss was the difference between cost and sale price. The decisions in the *Flannery* and *Ludington* cases were largely based on *Goodrich* v. *Edwards*, 255 U. S. 527, and *Walsh* v. *Brewster*, 255 U. S. 536. In these latter cases the court, applying the Revenue Act of 1916, held that no taxable gain was realized where the taxpayers sold property acquired prior to March 1, 1913, for an amount greater than its value on March 1, 1913, but for less than cost. In the *Flannery* case the court said:

These decisions are equally applicable to the Act of 1918. There is no difference in substance between the language of the two Acts in respect to the ascertainment of the gain derived or loss sustained from the sale of property acquired before March 1, 1913; and the correlative nature of these two provisions is emphasized in the Act of 1918 by their combination in one and the same sentence. As it was held in these decisions that the Act of 1916 imposed a tax to the extent only that gains were derived from the sale, and that the provision as to the market value of the property on March 1, 1913, was applicable only where a gain had been realized over the original capital investment, so we think it should be held that the Act of 1918 imposed a tax and allowed a deduction to the extent only that an *actual* gain was derived or an *actual* loss sustained from the investment, and that the provision in reference to the market value on March 1, 1913, was applicable only where there was such an actual gain or loss, that is, *that this provision was merely a limitation upon the amount of the actual gain or loss that would otherwise have been taxable or deductible.* (Italics supplied.)

The court concludes:

Since Flannery sustained no *actual* loss in the transaction in question, having sold the stock for more than it had cost, his executors were not entitled to the deduction which they claimed because it was sold at less than its market value on March 1, 1913. (Italics supplied.)

It will be observed that the court limits the term "actual loss" to the difference between cost and selling price and further that it holds that the provisions of section 202 are merely limitations "upon the amount of actual gain or loss that would otherwise have been taxable or deductible." If we accept petitioner's contention that section 202 has no application to cases of involuntary losses, we find ourselves without any statutory limitation whatever, in which state of case we must find that petitioner's loss is only his actual loss; that is, the actual cost of the property destroyed. It is not necessary to decide whether section 202 is or is not applicable to cases of involuntary loss until that question is presented. It is sufficient here to say that irrespective of whether that section is or

is not applicable, the result in this proceeding will be the same; that is, that petitioner's deductible loss, is, under the facts of this case, the actual cost of the property destroyed. This is in harmony with *Lock, Moore & Co.*, 7 B. T. A. 1008, and *Joseph E. Hubinger, supra*, both of which are squarely in point.

*Judgment will be entered under Rule 50.*