CORA K. LOUIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49179. Promulgated February 23, 1934.

*Theodore B. Benson, Esq.,* for the petitioner.
*James H. Yeatman, Esq.,* for the respondent.

OPINION.

LANSDON: The respondent has determined a deficiency in income tax for the year 1925 in the amount of $1,107.09, from which the petitioner appeals on the allegation that a loss sustained in that year has been erroneously disallowed as a deduction from gross income.

The parties have filed a stipulation, which is accepted and incorporated herein by reference. The following is a summary of the material facts:

Petitioner is an individual who resides at Los Angeles, California. Her father died testate on December 28, 1912, and in his will, probated in Cook County, Illinois, on January 2, 1913, disposed of an estate of the net value of $2,868,442.39. The estate was left in varying proportions to the widow, two sons and three daughters of the decedent. Among other things each of the daughters was to receive $75,000. The petitioner and her sisters were not satisfied with their shares of their father's estate under the will and, on April 19, 1913, entered into an agreement with their brothers whereby each was to receive one-third of certain personal properties included in the estate inventory, and, in addition thereto, an annuity of $5,000 during the life of their mother, Rosalinda Klein, in lieu of all their interests under the will. Under this agreement the annuity to the sisters was expressly specified as the joint and several obligations of the brothers. At the date of such agreement the life expectancy of the mother was fifteen years, one month and nine days. The present worth of an annuity of $5,000 per year, payable semi-annually over that period, is $57,753.50. Rosalinda Klein died in 1925, at which date the petitioner had received annuity payments under the agreement in the amount of $60,000. Such total payments discounted back to April 1913 had a then value of $48,568.94. If Rosalinda Klein had lived out her expectancy, petitioner could have received six additional payments of $2,500 each, or a total of $15,000. That amount had a capital value as on April 1913, of $9,184.56, which is claimed by the petitioner as a deductible loss in the taxable year.

The only question here is whether the petitioner sustained a loss in the year in which the death of her mother terminated the annuity payments provided for by contract with her brothers on April 19, 1913. The answer to this question involves (1) whether an annuity contract is property; (2) the amount of petitioner's capital investment as the cost of the annuity; (3) the amount of such investment recovered by her prior to the taxable year; (4) whether the annuity contract was a transaction entered into for profit; and (5) whether the termination of such contract by the death of petitioner's mother was a disposition thereof within the meaning of section 204 (a) of the Revenue Act of 1926.

The amount of $75,000 was devised to the petitioner in her father's will, but the record is not clear that the annuity was based thereon or in lieu thereof. After the will was probated, the three sisters and two brothers agreed among themselves to a distribution of that portion of their father's estate left to them which was materially different from the terms thereof. As part of the compromise settlement with her brothers and sisters, petitioner acquired the right to receive $5,000 a year during the life of her mother, whose life expectancy on April 19, 1913, was something over fifteen years. What she surrendered was an interest in her father's estate sufficient to purchase the annuity in question and if that interest was

the capital basis of such annuity it was equal to the present worth thereof computed on the mother's life expectancy of fifteen years, one month and nine days, which the parties agree was $57,753.50. In *Florence L. Klein*, 6 B.T.A. 617, in a proceeding involving the taxability of the income received under this same annuity contract, we said: " The significant fact now before us is that the value of what petitioner acquired by contract on April 19, 1913, became the capital basis for measuring any subsequent gain or loss in respect thereof." We are of the opinion that such amount was the cost of the petitioner's annuity at April 19, 1913.

The contention of the petitioner is that the annuity contract was property which cost her at least $57,753.50 and that, when her interest therein was terminated by the death of her mother, she sustained a loss under the provisions of section 202 (a) of the Revenue Act of 1924,[1] measured by the difference between her capital investment and the amounts thereof recovered in the annual payments. That an annuity contract is property is too well established to require any discussion or citation of authorities. Here the annuity is not payable out of either the corpus or income of the estate of petitioner's father, but is created by contract between petitioner and her brothers, and there is therefore no question as to whether she received the annual payments as a beneficiary of the estate. If the termination of the contract by the death of the petitioner's mother was a disposition of such property within the meaning of the taxing statute, it follows that the whole amount of the difference between the basis at acquisition and the recoveries of capital prior to such disposition is a deductible loss in the taxable year.

In *William P. Blodgett et al., Executors*, 13 B.T.A. 1243, we held that the right of an estate to receive its decedent's share of the profits of a partnership for one year was a chose in action transmitted to the estate by such decedent and its capital cost was the present worth of such interest at the date the right to receive vested in the estate. The Commissioner determined that the entire amount of the partnership profits received by the estate during such first year was taxable income. We held that the chose in action was a capital asset of the estate and that realization therefrom was income only to the extent of the excess thereof over capital value at date of acquisition.

In *Guaranty Trust Co. of New York, Executor*, 15 B.T.A. 20, the petitioner in the year 1919 exchanged certain leaseholds for an an-

---

[1] SEC. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

nuity of $100,000 per year and the next two years received the respective amounts of $100,000 and $99,999.96 in conformity with the contract under which the exchange was made. The Commissioner undertook to tax the total of each payment as income in the year in which it was received. In that proceeding we held that the present worth of the contract computed on the annuitant's life expectancy should be regarded as the fair market value of the annuity and as the starting point from which to determine the taxability of amounts received under the contract and that the owner is entitled to recover such value free from tax. On the authority of *Florence L. Klein, supra,* we also held that each annual payment constituted in part a recovery of capital and in part a gain.

In *Florence L. Klein, supra,* involving the identical contract now under consideration, we said that " when actually received in each year the annual payment consists of the principal of such payment, plus the discount, the latter being the gain taxable as income." This is the rule that was later applied in the cases above cited and discussed. None of the proceedings cited has been overruled by the Board or reversed on appeal, and as to the question therein decided they are controlling on similar issues.

In conformity with the decisions above cited and upon the stipulated facts, it follows that petitioner sustained a loss of $9,184.56 in the taxable year if the termination of her annuity contract by the death of her mother in 1925 can be regarded as the closing of a transaction entered into for profit as provided in section 214 (a) (5) of the Revenue Act of 1924. In *George M. Cohan,* 11 B.T.A. 743, a very similar question was involved. In that proceeding the facts disclose that prior to the taxable year the petitioner had purchased an annuity contract and had made several substantial payments thereon. In the taxable year he decided that he had made a poor investment and forfeited the contract by nonpayment of installments then due. In his petition he claimed the right to deduct the sum of all payments theretofore made from his gross income as a loss sustained in the taxable year in a transaction entered into for profit. In our decision we held that an annuity contract is a transaction entered into for profit, that payments thereon are investments in property, and that the sum of such payments is a deductible loss in the year in which the contract is voluntarily forfeited for nonpayment of installments then due.

In *Pioneer Cooperage Co.,* 17 B.T.A. 119, the petitioner claimed a deductible loss in the taxable year resulting from the destruction of timber by storm and the ravages of insects. In our decision we held that the facts brought the petitioner's contention within the loss provisions of the statutes. Upon appeal by the petitioner for

increase in the amount of loss allowed by the Board, our decision was affirmed on all points in *Pioneer Cooperage Co.* v. *Commissioner*, 53 Fed. (2d) 43; certiorari denied, 284 U.S. 687. In its opinion in that case the Circuit Court, in discussing the precedents relied on by the parties, said:

These decisions refer to sale of property. The act includes not only sales, but other disposition of property. A loss of property, such as occurred in this case, is a disposition within the meaning of the act, although it is involuntary. The property is disposed of so far as the owner is concerned, and there is no reason, in the absence of a positive statute, in determining a loss why a different rule should be adopted than in the case of a voluntary sale. The purpose of the act is to allow the owner to deduct what he has actually lost in the transaction. The depletion and exhaustion statutes were not intended to cover losses such as are involved here.

On brief the respondent relies on *Warner* v. *Walsh*, 15 Fed. (2d) 367; *United States* v. *Bolster*, 26 Fed. (2d) 760; *Allen* v. *Brandeis*, 29 Fed. (2d) 363; *Logan* v. *Commissioner*, 42 Fed. (2d) 193; affd., *Logan* v. *Burnet*, 283 U.S. 444; and *Mary W. B. Curtis*, 26 B.T.A. 1103. In our opinion these cases are all distinguishable from the present proceeding. In each the income in question was payable from an estate and the issue was whether, in accepting the terms of a will providing for annual payments from a testamentary trust, a widow bought an annuity at the cost of her relinquished interest in the estate to which she was entitled under the law. There is no such question here. This annuity is based on a contract between the petitioner and her brothers. The payments were not made from the estate, but from the personal resources of the brothers, who, after April 19, 1919, were obligated to pay, entirely regardless of the amounts received by them from the estate. In the cases cited the payments were made either by the estate or by a testamentary trust and apparently involve no rule applicable to the present proceedings. In any event they have been so greatly modified by the Supreme Court in *Helvering* v. *Butterworth*, 290 U.S. 365, that they are no longer controlling as to the principal question therein involved.

In our opinion the weight of authority supports the contention of the petitioner. There is no controversy of the present worth of the annuity at date of the contract or that of the payments received thereunder. Accordingly, we hold that petitioner sustained a loss in the taxable year in the amount of $9,184.56. The determination of the respondent is reversed.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

MARQUETTE and LEECH dissent.