Gilbert J. Kraus v. Commissioner.
Kraus v. Commissioner
Docket No. 22594.
United States Tax Court
1951 Tax Ct. Memo LEXIS 49; 10 T.C.M. (CCH) 1071; T.C.M. (RIA) 51327; October 31, 1951
*49 1. Petitioner and his wife owned a beach home as tenants by the entireties on the New Jersey Coast. It and its contents were extensively damaged in a storm on September 14, 1944. The amount of loss was determined. 2. Petitioner and his wife owned the realty as tenants by the entireties; and petitioner, individually, owned the personalty. Held, petitioner is entitled to deduct only one-half of the loss sustained to the realty but may deduct the total loss to the personalty. A. R. Kane, Jr., Esq., 1504 Lincoln-Liberty Bldg., Philadelphia 7, Pa., for the petitioner. James T. Cox, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of the petitioner for 1944 in the amount of $6,787.85. By amended answer, respondent asks for an increase in *50 the deficiency to the amount of $8,086.20. The questions to be decided are: (1) the amount of the loss suffered by petitioner in the taxable year from damage to a beach home and personalty therein as the result of a storm which occurred in 1944, deduction for which is claimed under section 23 (e) (3) of the Code; and (2) whether petitioner is entitled to deduct the full amount of said loss or only one-half thereof because the property was owned by himself and his wife as tenants by the entireties. Petitioner claims he is entitled to a refund for overpayment of income taxes for such year in the sum of $2,813.15. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner is an individual residing at Sugar Bottom Farm, Furlong, Bucks County, Pennsylvania. Petitioner and his wife, Eleanor J. Kraus, were married in 1924 and have resided together continuously from 1924 to the present time. Petitioner and his wife filed separate individual income tax returns for the taxable year 1944 with the collector of internal revenue for the first collection district of Pennsylvania at Philadelphia, Pennsylvania. In 1937 *51 petitioner and his wife purchased a plot of land on the ocean in Harvey Cedars, New Jersey, at a cost of $1,500. Title to the land was taken in the names of Gilbert J. Kraus and Eleanor J. Kraus, his wife, as tenants by the entireties. In 1937 a beach house of modernistic design was built on the property at a cost of $9,461.03. Additions and improvements were made in the years 1939, 1940, and 1941 at a total cost of $7,045.50. The total cost of the real property (not including a mural painting on a wall of the studio), after all improvements were made, was $18,006.53. The house was three stories high and of frame construction. The first floor contained a three-car garage, an entrance hall, two bedrooms and bath, and a paneled room. The second floor comprised a large livingroom approximately 16 X 32feet, a diningroom, kitchen, hall and powder room, a large studio, and a porch along the ocean side of the house. The third floor contained four bedrooms and two baths. The grounds contained a formal garden and a driveway and parking area. Petitioner furnished the house with furniture and other household effects acquired by purchase and by gift from 1924 through 1939. Approximately *52 20 per cent of the furnishings was acquired prior to 1930, and the bulk of the furnishings was acquired about 1937. Some of the furnishings were gifts to the petitioner. The others were purchased with his money. The studio on the second floor had special walls of plywood on two sides which were designed to have murals painted on them. A friend of petitioner, one Floyd Davis, artist and illustrator, who occupied a house near petitioner's house, painted a mural on the east wall of the studio. It was an underwater scene of marine life, in oil, and was approximately 24feet long and about 10feet high. The artist painted the mural in his spare time during one summer at the beach, taking approximately four months to complete it. The artist had never painted a mural before for anyone else and had done very few paintings of any kind except illustative drawings for magazines and other commercial concerns, which amounted to about 99% of his work. He received from $3,000 to $5,000 from advertising agencies for some of such drawings. Neither petitioner nor his wife paid the artist for painting the mural. Petitioner and the artist had been friends for many years; and over the years petitioner, *53 a lawyer, had rendered various legal services to the artist free of charge. The artist painted the mural, without charge, in recognition of his obligation to petitioner and because of their long friendship. On September 14, 1944, a storm struck the Harvey Cedars area, causing considerable damage to the real property and to the household goods and furnishings located on petitioner's premises. The day after the storm, petitioner and his wife visited the property to inspect it and apprise themselves of the damage. At that time they moved some of the furnishings and personal effects to less exposed portions of the damaged house, but took nothing away from the premises. At that time petitioner's wife made a list of the articles still in the house and of those that she could remember as having been there before the storm. From that list she subsequently made another list (which was admitted in evidence) showing, to her best recollection, the cost of such articles, and, in many instances, the store from which they were purchased. The list totals approximately $16,800 not including a painting by Leon Kelley, which was blown away, valued at $1,000. As a result of the storm, the first floor *54 of the house, except the support columns, was washed away together with all of the furnishings thereon. The sand dunes on the ocean side of the house had been flattened and were washed back through the first floor of the house. The garden had been covered completely and ruined. The roof over the main part of the house had been destroyed and broken in pieces, windows were out, and doors were blown in. The studio roof had been blown completely off and over the house and was on the sand some distance away. Various walls of the house had also been blown out. Some of the household effects were hauled to Philadelphia and stored. A piano was sold for $20. Some porch furniture and venetian blinds were sold for $55. The remainder of the household effects was kept in storage for about nineteen months at a cost of $8 per month, a total storage cost of approximately $152. While the remaining effects were in storage, petitioner's wife received an offer of $350 for them from a potential buyer of the Harvey Cedars house but he withdrew his offer when he was unable to buy the house. In 1946 petitioner withdrew the remaining unsold household effects from storage and had them hauled to a house they *55 owned a short distance from Philadelphia, at a cost of $50.17. An icebox and stove were among such effects. Both the icebox and stove were moved into petitioner's house and used. The stove needed extensive repairs. Neither the stove nor the icebox were included in the items making up the loss claimed by petitioner. Petitioner's wife testified that a few of the other things were kept for a short time and used even though they were scratched, wet, and warped, but later on they were thrown away or given away and some were burned. Neither petitioner nor his wife had ever prepared or kept at any time prior to the storm any record or inventory of any kind of the household or personal effects in the beach house. In 1943 the beach house was rented for one month for approximately $600. This was the only time it was ever rented. Petitioner reported the entire rental income from the property in his 1943 return, and in that year claimed and was allowed a deduction for depreciation for a full year in the amount of $600. An expert witness valued the Davis mural at the time of the casualty at from $15,000 to $25,000. It was completely destroyed by the storm. Petitioner had a fire and extended *56 coverage insurance policy in the sum of $10,000 on the realty and $2,500 on the household and personal effects located there. On December 16, 1944, petitioner and his wife filed a sworn statement in proof of loss to the insurance company in which the actual cash value of thehouse and contents was stated to be $29,968.46, and the loss caused by the storm was stated to be $12,572.17. The claims adjuster for the insurance company determined that the 1944 "sound value" (replacement cost less a fair depreciation) of the house and lot was $17,468.46, and that such "sound value" of the household and personal effects was $12,500. He determined, for insurance purposes, that the loss to the realty caused by the storm, including wind damage and rain water, but excluding sea damage, was $8,541.98; and that the loss to the household and personal effects, after making an allowance of $165 for items not insured, $3,164.11 for depreciation, and $3,168.20 for salvage value, was $4,030.19. The total loss claimed by petitioner and his wife to the insurance company, to which the adjuster agreed, was $12,572.17, and the claim was eventually compromised for $11,041.98, which included $8,541.98 for realty *57 and $2,500 for the personalty because of insufficient insurance on the personalty. On December 20, 1944, the insurance company paid petitioner and his wife $11,041.98 in full satisfaction of their claims. The house and lot were sold by petitioner and his wife on March 27, 1945, for $5,000 less a brokerage commission of $250. In his separate, individual income tax return for 1944, petitioner claimed a total loss due to the storm of $14,144.48. He computed the amount of deductible loss by subtracting a value of $4,800 for the house and lot after the storm and a recovery of $11,041.98 from the insurance company from a total value before the storm of $29,986.46. No allowance was made by petitioner for any salvage value of the personal property after the storm or for the proceeds of sales of personal property after the storm. Petitioner's wife filed a separate, individual income tax return for 1944, but claimed no deduction in her return for any loss due to the storm. The respondent determined that the total amount deductible by the petitioner and his wife due to storm damage in 1944 is $4,188.21, including $1,530.19 for the household and personal effects and $2,658.02 for the *58 realty. In computing the increased deficiency, respondent further determined that the above amount is deductible one-half to the petitioner and one-half to his wife as tenants by the entireties. The fair market value of the realty on September 14, 1944, was $25,000, including the mural at $5,000. The adjusted cost basis of the realty (including the mural) on September 14, 1944, was $22,406.53. The fair market value of the realty after September 14, 1944, was $5,000. The fair market value of the household and personal effects on September 14, 1944, was $12,500. The adjusted cost basis of the household and personal effects on September 14, 1944, was $15,000. The fair market value of such household and personal effects after September 14, 1944, was $500. Petitioner and his wife owned the real property as tenants by the entireties; and petitioner, individually, owned the personalty. Opinion RICE, Judge: Respondent determined that amount of the deductible casualty loss under section 23 (e) (3) of the Internal Revenue Code[1] sustained by the petitioner and his wife as the result of damage caused by a storm to their property in Harvey Cedars, New Jersey, *59 in the taxable year 1944 was $4,188.21. Petitioner claimed on his individual income tax return for such year a deduction for such loss in the amount of $14,144.48, but now contends that the loss was substantially greater than that amount. Respondent further determined that the allowable loss is deductible one-half by petitioner and one-half by his wife in their respective individual income tax returns for 1944 because they owned the property as tenants by the entireties. Petitioner contends that he is entitled to deduct the entire amount of the allowable loss and that no part of the loss is deductible by his wife. The amount of deductible loss of property not used in a trade or business under such section is the difference between the fair market value of the property immediately before the casualty and the fair *60 market value of the property after the casualty, but not in excess of the cost or other adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939). In that case, the Supreme Court said: "* * * the amount of the deduction * * * may not exceed cost, and in the case of depreciable nonbusiness property may not exceed the amount of the loss actually sustained in the taxable year, measured by the then depreciated value of the property." See also I.T. 4032, 1950-2 C.B. 21. Two licensed real estate brokers, who were familiar with petitioner's property and who had been in business for a number of years in that locality, testified as to the fair market value of the realty immediately preceding the storm and immediately after the storm. One witness stated that its fair market value immediately preceding the storm was $20,150 and immediately thereafter it was $4,850. The other witness testified that the fair market value before the storm was $20,000 and after the storm $4,500. Respondent introduced no independent testimony to refute petitioner's real estate expert witnesses. These witnesses made no attempt to include the value of the mural in their appraisal of the *61 realty and were obviously not qualified to do so. Nor does it appear from the record that they knew that the mural, having been painted on the wall of the studio, was a part of the realty. Dr. Boris Blai, Founder and Dean for the past 17 years of the Tyler School of Art at Temple University, Pennsylvania, qualified as an expert on paintings and testified that in his opinion the Davis mural had a value at the time of the casualty of from $15,000 to $25,000. He stated that he had known the artist, Davis, intimately for the past 25 years and that, in the art world, Davis would be considered one of America's greatest painters if he were in good health, but that he developed a brain tumor shortly after he completed the mural and has never completely recovered. He stated that Divis was in his "fullest period" at the time he painted the mural; and that, if he had had the money, he would have paid $10,000 to have had the mural in his house. He watched the mural being painted from the first day it was commenced until it was finished. Dr. Blai also testified that the value of the Leon Kelley painting, which was also destroyed by the storm, was $1,000. He stated that it was a painting of *62 approximately 25inch X 30inch, that it was beautifully painted, that the artist had a promising future, that his paintings were a "little bit" expensive, and that he had bought about 10 paintings from Mr. Kelley for the Blai Foundation of Temple University. On examination by respondent's counsel and questioning by the Court, the witness stated that it was difficult to establish a price with art and that generally it is the reputation of the artist that determines what he charges. He stated that he knew one artist who charges $1,500 for a portrait and another who charges $3,000, but that the man who charges $1,500 made a better portrait than the man who charges $3,000. Dr. Blai convinced the Court of his qualifications and sincerity, but we also received the impression that his exhuberant enthusiasm for Davis' work, together with Davis' subsequent illness which will probably prevent Davis from ever painting again, led him to overvalue the mural. On the whole record made in this case, and after careful study of Dr. Blai's testimony, we are of the opinion that the value he set on the Davis mural was too high and that the value we have placed on it in our Findings of Fact is a liberal *63 one. The fair market values of miscellaneous items of household goods and furniture before and after a casualty are always difficult of determination. The normal circumstances attending the acquisition and retention of such articles as rugs, chairs, tables, lamps, and dishes make proof of their cost difficult and proof of their value at any given time almost impossible. It is, therefore, incumbent upon us from the whole record to make as equitable an approximation of such values as may be possible. In this case, a list of household goods and furniture was prepared by the wife of petitioner the day after the storm. She testified that she went through the house and wrote down on the list articles that she saw and also added to the list articles that she remembered at that time as having been in the house before the storm, many of which had been washed or blown away. With the help of this list, petitioner's wife subsequently made up another list showing the dates such articles were purchased, in many instances the stores from which they were purchased, and their cost. Such list totaled approximately $16,800, not including the Leon Kelley painting which the expert art witness valued *64 at $1,000. The insurance adjuster estimated the value of only a portion of such personalty before the casualty at $12,500. The adjuster also estimated the salvage value of such personalty after the storm at $3,168.20. Petitioner claims it had no salvage value whatsoever. The list prepared by petitioner's wife contained almost 1900 items of property; and while we agree with respondent that the recollection of petitioner's wife as to the cost of such items over such a long period of years might not be completely accurate, it is the best we have to go on and is somewhat corroborated by the estimates made by the insurance adjuster. It is probably as accurate and complete a list as could be prepared under the circumstances. We agree with petitioner as to the fair market value of the personalty on September 14, 1944, but cannot agree that it had no value after the storm. We have found as a fact the fair market value of the property involved, immediately before and immediately after the casualty, and the adjusted cost basis of the property for loss purposes. Under the rule enunciated by the Supreme Court in Helvering v. Owens, supra, and I.T. 4032, supra, the loss in this *65 case is computed by subtracting from the difference in said fair market values (including salvage value) or theadjusted cost basis, whichever is the lesser, the amount of any insurance or other compensation received by virtue of such loss. Petitioner argues on brief that this is an incorrect method of determining the loss. His argument is that, where the difference in the fair market values before and after the casualty minus any insurance or other compensation received by the taxpayer on account of such loss exceeds the adjusted cost basis, the amount of the actual loss sustained by the taxpayer is his adjusted cost basis without diminution thereof by any such insurance or other compensation. While it may be true that many a taxpayer in these days of inflated values thinks of a loss of his residence by fire, storm, or other casualty in terms of its market value on the date of loss, such is not the case for purposes of a loss deduction for income tax purposes under section 23. "Actual loss sustained" is the rule laid down by the courts and not "replacement value" which is what petitioner's argument amounts to. See Pioneer Cooperage Co., 17 B.T.A. 119 (1929) and cases *66 cited therein, affd., 53 Fed. (2d) 43 (C.A. 8 1931), cert. den., 284 U.S. 686 (1932). If a replacement-value rule is more equitable than the present one, a change thereto must be made by the Congress and not by this tribunal. The second question we must decide is whether petitioner is entitled to deduct the full amount of the casualty loss or only one-half thereof on the theory that the property was owned by himself and his wife as tenants by the entireties. Petitioner argues that all of the funds used to buy the land and construct the house came from petitioner's own earnings or from his own personal bank account; that petitioner's wife at that time had no substantial income of her own; and that if petitioner is restricted to a deduction on only one-half of the casualty loss, such a result is a purely legalistic approach and has no place in the field of Federal taxation. Petitioner cites some language of this Court appearing in Paul G. Greene, 7 T.C. 142 (1946) at page 150: "It is axiomatic that the reach of the income tax law is not to be circumscribed by refinements of legal title. The rule finds expression in the oft repeated admonitions *67 that taxation is an intensely practical matter, concerned with economic realities; that tax consequences flow from the substance of a transaction rather than from its form; and that command over property or enjoyment of its economic benefits marks the real owner for income tax purposes. * * *" That case contained two issues. The language relied on by petitioner, and quoted above, refers to the first issue which involved a family partnership. The second issue in the case dealt with rental income received by a husband and his wife from property which they owned as tenants by the entireties, and we held that the husband was taxable on only one-half of the rental income. Petitioner further argues that title was taken in the joint names of the petitioner and his wife purely for tax-saving purposes in New Jersey, and that we should thrust aside refinements of legal title and deal with the practical aspects as disclosed by the facts in this case. He also cites a Bureau ruling, I.T. 3304, 1939-2 C.B. 158, in which it was held that where property, owned by a husband and wife as tenants by the entireties, was damaged by a hurricane and the husband defrayed all the expenses of *68 repairing it, the husband, in his separate return, was allowed to deduct the full amount of the loss actually sustained. He concludes from this that, if petitioner in the instant case had elected to restore the property by repairing it (using his own funds to do so), rather than to sell it in its damaged condition, he would have been entitled to the full deduction, and it is illogical to treat the two situations in a different manner because the actual loss to the taxpayer is just as real in the one case as in the other. He also cites a General Counsel's Memorandum in which it was held that where property is owned by a husband and wife as tenants by the entireties, either spouse may deduct in his or her separate income tax return the full amount of taxes and mortgage interest paid with respect to such property during the taxable year. To the same effect, although not cited by petitioner, is F. C. Nicodemus, Jr., 26 B.T.A. 125 (1932). It is clear from the record in this case that the petitioner and his wife owned the real property as tenants by the entireties. See Baker v. Kennerup, 140 A. 681, 102 N.J. Eq. 367 (1928); Zanzonico v. Zanzonico, 46 A. 2d 565, 24 N.J. Misc. 153 (1946). *69 In order to support a deduction arising out of a casualty loss to property, a person claiming the loss must be the owner of the property at the time of the loss. See Thomas J. Draper, 15 T.C. 135 (1950). The cases cited by petitioner allowing deductions of taxes and interest, and repairs, paid by the husband, are distinguishable because the husband was jointly and severally liable with his wife for the taxes and interest in the one case, and in the other case he voluntarily made the repairs and, so far as appears from the ruling in that case, he did not require the other tenant (his wife) to reimburse him for one-half of such expenditures. Since the petitioner and his wife owned the real property as tenants by the entireties, it follows that only one-half of the loss sustained on the realty is deductible by the petitioner in his 1944 separate income tax return. The respondent pled affirmatively in his amended answer that the personalty was owned by petitioner and his wife as tenants by the entireties. The burden of proof is therefore on him under Rule 32 of the Rules of Practice of this Court. The record shows that the respondent failed to sustain his burden on this *70 issue, and the loss sustained on the personalty is deductible in full by the petitioner. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. * * *↩