**359 A.2d 701.**

BEVERLY A. LEVADA *vs.* ROBERT G. LEVADA.

JULY 8, 1976.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. On Monday, May 3, 1976, as part of the Bicentennial Celebration, this court convened in the historic Colony House, in the City of Newport, to hear appeals in three cases which had close connections with that famous city-by-the-sea. This was the first time since May 26, 1905, over 70 years, that the Supreme Court of this state held court there. Among the cases scheduled for hearing on May 3, 1976 was the case at bar which is an appeal by a husband from two orders entered in the Family Court in Newport denying his objections to the entry of a final decree in a divorce case in which his wife was awarded a divorce, and also from the entry of the final decree in that case.

This matter has a long history, having been before the Family Court in Newport on numerous occasions for hearings on various motions filed by the parties. We shall refer only to those portions of the record which are pertinent to the issues raised by the instant appeal and which disclose the following factual background.

On November 4, 1974, petitioner, Beverly A. Levada, filed in the Family Court in Newport a petition for absolute divorce from respondent, Robert G. Levada, on the grounds of extreme cruelty. The respondent subsequently filed a cross-petition on the same grounds. On May 29, 1975, petitioner's petition was granted and thereafter an interlocutory decree of divorce was entered on June 23, 1975.

On December 1, 1975, respondent filed a motion objecting to the entry of the final decree, alleging that peti-

tioner had not been a good and faithful wife during the period following the entry of the interlocutory decree of divorce. This motion, hereinafter referred to as the first motion, was heard on December 1 and December 11, 1975, before a justice of the Family Court in Newport. On the latter date the trial justice denied respondent's motion, directed petitioner's counsel to prepare the final decree of divorce and ordered the decree to be entered.

On December 18, 1975, petitioner's counsel presented to the Family Court justice in Newport, for his signature, an order granting petitioner a final decree of divorce. On the same day respondent's attorney filed a second objection to entry of the final decree, alleging that petitioner had been guilty of misconduct in the early morning hours of Sunday, December 14, 1975, and further alleging that this misconduct had been observed by respondent and other witnesses who stood ready to testify. The certification on respondent's objection indicates that petitioner's counsel had not been previously provided with a copy of respondent's objection. The trial justice rejected respondent's attorney's request that the signing of the order be delayed pending a hearing on the motion. He denied the motion without hearing and signed the final decree of divorce presented to him by petitioner's counsel. On the same day the clerk of the Family Court in Newport entered the final decree of divorce.

The case is before us on respondent's appeal from the denial of his motions objecting to the entry of the final decree and also from the final decree of divorce.

## I

We address ourselves initially to the denial of respondent's first motion objecting to the entry of the final decree. He alleged that petitioner had not conducted herself as a good and faithful wife during the period of 6 months following the entry of the interlocutory decree

of divorce and prior to the entry of the final decree. At the hearing on that motion respondent testified that he had observed a red automobile belonging to one Joseph Davis parked outside petitioner's apartment house on many occasions from midnight until as late as 5:30 a.m.

The petitioner admitted that Joseph Davis had been in her apartment on many occasions, but denied that he had been there any later than 1 a.m. She testified that Joseph Davis was, in fact, respondent's former brother-in-law, whom she had known for over 14 years; that he never visited her alone, but always in the company of her brother and her sister-in-law who lived on the second floor of the same apartment house. Her testimony was substantiated by her sister-in-law. The latter testified that on the evenings when Davis was in petitioner's apartment, she was also present; that Davis was never alone with petitioner and no one ever stayed later than 1 a.m.

On December 11, 1975, the trial justice rendered his decision denying respondent's motion. After reviewing the evidence he found that respondent's testimony was not convincing and lacked corroboration of any kind. It is clear from his decision that he relied heavily on the testimony of petitioner's sister-in-law in finding that petitioner had not violated her marriage contract during the 6-month waiting period for the final decree. As we have previously stated, after denying the motion, he ordered the decree to be entered and asked petitioner's counsel to prepare the same.

In challenging the correctness of the trial justice's ruling, respondent contends that the findings on which the trial justice based his ruling are clearly wrong and that in finding that "one of the latest times was when they were playing cards at ten o'clock" he misconstrued the evidence. For the reasons that follow we affirm the trial justice's ruling denying respondent's motion.

The evidence in this case is conflicting on the question concerning petitioner's conduct during the 6-month waiting period following the entry of the interlocutory decree. In *Pakuris* v. *Pakuris,* 95 R.I. 305, 309-10, 186 A.2d 719, 721 (1962), we held that the prevailing party in a divorce case must continue to comply with the allegations of the petition for divorce, pertaining to his or her conduct, up to the time of the entry of the final decree and any conduct which would bar a decision for divorce on the original petition presents grounds for contesting entry of the final decree. This is so, we held, because a decision for divorce does not terminate the marriage until entry of the final decree. By his testimony, respondent attempted to prove that petitioner had failed to comply with the rules set forth in *Pakuris* v. *Pakuris, supra.* On the other hand, petitioner presented evidence denying any wrongdoing during the period in question.

This direct conflict in the evidence brings us face-to-face with the rule in this state that findings of fact made by a trial justice on conflicting evidence will not be disturbed unless it is shown that such findings are clearly wrong or that the trial justice overlooked or misconceived material evidence relevant to the controlling issues decided. *Poirier* v. *Poirier,* 107 R.I. 345, 350-51, 267 A.2d 390, 393 (1970). There is evidence, namely the testimony of petitioner and her sister-in-law, which, if believed, clearly supports the findings made by the trial justice. The burden of proving misconduct on the part of the prevailing party sufficient to sustain the granting of a motion to refuse to enter a final decree is on the movant. *Gaccione* v. *Gaccione,* 112 R.I. 676, 681, 314 A.2d 423, 426 (1972). In the case at bar, respondent has failed to sustain his burden, as the moving party, of showing that the trial justice's findings with respect to petitioner's alleged misconduct were clearly wrong.

There remains only respondent's claim that the statement of the trial justice that the testimony was to the effect that Davis was in petitioner's house playing cards a 10 o'clock clearly misconstrued the evidence. Even if we assume that this statement was erroneous, we are not convinced that it affected the trial justice's ultimate decision on this issue. It is clear from this record that he relied on the testimony of petitioner's sister-in-law in concluding that respondent had failed to sustain his burden of proof. That is, the trial justice was not satisfied by respondent's testimony that petitioner was guilty of misconduct and he relied on the sister-in-law's testimony that there was no misconduct by petitioner on the occasions claimed by respondent. In conclusion we note that respondent's suspicions in the case at bar are clearly distinguishable from the facts in *Pakuris* v. *Pakuris, supra,* where the wife admitted living with another man during the statutory 6-month waiting period prescribed in G.L. 1956 (1969 Reenactment) §15-5-23.[1]

## II

We come now to the December 18, 1975 denial without hearing of respondent's second objection to the entry of the final decree. The facts pertaining to this action have been set forth above and require no repetition here

---

[1]General Laws 1956 (1969 Reenactment) §15-5-23 reads as follows:

"Remarriage—Final decree.—After final decree for divorce from the bond of marriage either party may marry again; but no decree for such divorce shall become final and operative until six (6) months after the trial and decision. Final decree from the bond of marriage may be entered ex parte and in chambers on the suggestion of the prevailing party at any time within thirty (30) days next after the expiration of six (6) months from the date of decision. After the expiration of said thirty (30) days, final decrees may be entered only in open court and on motion, notice of which shall be duly given; provided, however, that notice of the filing of said motion shall not be required in cases in which the original petition is unanswered."

except to point out that respondent based that objection to an incident he claims occurred on December 14, 1975. Again relying on *Pakuris* v. *Pakuris, supra,* respondent argues that the alleged misconduct occurred prior to the entry of the final decree and, therefore, under *Pakuris,* was sufficient to bar the entry of the final decree. In making this argument respondent contends that a decree of divorce does not become final within the meaning of §15-5-23 and our decision in *Pakuris* until it has been signed by a justice of the Family Court and actually entered by a clerk. Since this had not been done in the case at bar, respondent argues that the parties were still husband and wife on December 18, 1975, and therefore the trial justice erred in refusing to continue the matter for hearing on respondent's second objection and in signing the order granting the final decree and ordering it to be entered.

It is true, as respondent argues, that the final decree in the case at bar had not been actually signed or entered prior to December 18, 1975. But as we have said in prior decisions of this court, divorce proceedings follow the course of equity to the extent that the same is possible, and in appropriate cases involving such proceedings we consider that what should have been done had in fact been done and accordingly have held that a trial justice's decision constituted a decree. *Lamarche* v. *Lamarche,* 108 R.I. 213, 216, 273 A.2d 860, 861 (1971); *Pukas* v. *Pukas,* 104 R.I. 542, 543, 247 A.2d 427, 428 (1968); *Rogers* v. *Rogers,* 98 R.I. 263, 265, 201 A.2d 140, 141-42 (1964).

Thus, in the case at bar, the undisputed record shows that on December 11, 1975, the trial justice rendered an oral decision ordering the final decree to be entered. In the circumstances, in accordance with the principles set forth in *Lamarche, Pukas,* and *Rogers,* we consider that what should have been done had in fact been done,

and therefore construe the oral decision rendered on December 11, 1975 as constituting the final decree and the entry thereof and consequently the parties were not husband and wife on December 18, 1975. In view of this conclusion we find no error in the trial justice's denial without hearing of the respondent's December 18, 1975 objection.[2] We need not reach the question of the applicability of Rule 19(d) of the Family Court Rules of Practice or of the numerous cases cited by the respondent.

The respondent's appeal is denied and dismissed, the order and final decree appealed from are affirmed, and the case is remanded to the Family Court for further proceedings.

*Kathleen Managhan, Joseph T. Houlihan, Corcoran, Peckham & Hayes,* for petitioner.

*Mortimer A. Sullivan,* for respondent.

---

[2]We note here that the public policy expressed in §15-5-23 provides that no decree for divorce shall become final and operative until 6 months after the trial and decision, that in the case at bar the 6-month period expired on November 29, 1975, and that the incident on which respondent based his second motion occurred on December 14, 1975, well past the statutory waiting period.