Claire I. LINK

v.

STATE of Rhode Island.

Nos. 92–569–M.P, B 92–0096.

Supreme Court of Rhode Island.

Nov. 24, 1993.

**1346**

Thomas D. Goldberg, Pawtucket, for plaintiff.

Jeffrey Pine, Atty. Gen., Aaron Weisman, Asst. Atty. Gen. and Andrew Berg, Sp. Asst. Atty. Gen., for defendant.

OPINION

LEDERBERG, Justice.

This case comes before the Supreme Court on the petition for writ of certiorari of Claire I. Link (Link). Link seeks review of the order of an Appeals Panel (appeals panel) of the Administrative Adjudication Court (AAC) that sustained an appeal brought by the State of Rhode Island (state). The order of the appeals panel had reversed an AAC trial judge's dismissal of a charge of refusal to submit to a chemical (breathalyzer) test and remanded the matter for a new hearing.

The primary question is whether the appeals panel misapplied G.L.1956 (1982 Reenactment) § 31–27–2.1, as amended by P.L. 1990, ch. 329, § 1, in reversing the trial judge's decision to dismiss the charge against Link. We conclude that it did not, and we affirm the decision of the appeals panel.

I

Although the trial judge dismissed the refusal charge without making extensive findings of fact, the following events may be gleaned from the record before this court.

On the fourth of July 1992, South Kingstown Police Officers Paul J. Horoho and Brian O'Hara responded to a car accident on Curtis Corner Road in the town of South Kingstown where they found a vehicle driven by Link with its front end "smashed against a large tree." At the scene of the accident, Officer Horoho observed that Link's eyes were bloodshot and watery, that her speech was mumbled and slow, that her breath smelled of alcohol, and that her balance was unstable. The officers therefore administered a field sobriety test which Link failed.

Officer Horoho advised Link of her "on scene DWI rights" and arrested her. Link was then transported to the South Kingstown police station where, upon arrival, she was informed of her "in station DWI rights." Subsequently, the officers asked Link to submit to a breathalyzer test. Link declined and signed a rights form that reiterated her oral refusal. She was charged in summons No. G–07685 with refusal to submit to a chemical test and with a laned-roadway violation. A law-enforcement report stating, *inter alia*, that Link had refused the test was prepared by Officer Horoho pursuant to § 31–27–2.1(a).

As a result, the Administrative Adjudication Division of the Rhode Island Department of Transportation, on or about July 20, 1992, issued an official order stating that, pursuant to § 31–27–2.1, Link's Rhode Island driver's license was suspended for a minimum of three months.[1]

It also notified her that failure to request a hearing within fifteen days would result in final disposition of the matter. Link, through her attorney, denied the violation on July 30, 1992, and requested a hearing pursuant to § 31–27–2.1.

A hearing was scheduled for September 16, 1992. On that date, Link appeared with counsel before an AAC judge. Also present were Officers Horoho and O'Hara. At the start of the proceedings the officers were sworn in. Before they could present testimony, however, Link's counsel moved to dismiss the refusal charge. He argued that the South Kingstown police department's law-enforcement report pursuant to § 31–27–2.1 was defective because it did not reflect the true amount of the criminal/juvenile justice

1. Effective September 1, 1992, pursuant to P.L. 1992, ch. 453, the Administrative Adjudication Division was abolished and replaced by the Administrative Adjudication Court.

information systems fee (fee) imposed for refusal to take a chemical test. The report incorrectly listed the $147 fee as $115.

After listening to arguments on both sides, the hearing judge granted the motion and dismissed the refusal charge.

In response, the state, pursuant to G.L. 1956 (1982 Reenactment) § 31–43–4, as amended by P.L.1992, ch. 453, § 4, filed an appeal with the appeals panel on September 16, 1992. The appeal was heard on September 30, 1992. In a decision issued on October 28, 1992, the appeals panel reversed the AAC judge and remanded the case for a new hearing. The AAC eventually scheduled the second hearing for February 2, 1993. Prior to the hearing date, however, Link filed a petition for writ of certiorari, which we granted on December 17, 1992.

## II

Before addressing the main issue presented on appeal, we must respond to several ancillary contentions that have been raised.

## A

■ Link first contends that the appeals panel impermissibly failed to enumerate the grounds for its decision. Relying upon *Levada v. Levada,* 116 R.I. 600, 604, 359 A.2d 701, 704 (1976), Link maintains that the appeals panel could not disturb the AAC judge's decision without showing that the court had "overlooked or misconceived material evidence" or made findings that were "clearly wrong." *Levada* does not stand for this proposition, however. Rather, it requires the party seeking to disturb a trial justice's decision to show error. *Id.* Nothing in *Levada* requires an appellate court to make such a showing in its written decision. Furthermore, although the issuance of a decision without supporting reasons is discouraged, such a practice clearly comports with § 31–43–4(3), which simply requires the appeals panel, after reviewing an appeal, to file *"an appropriate order"* in the court records. (Emphasis added.)

## B

■ Link also argues that because the appeals panel's decision states that it was written by a judge, Chief Judge Casey, who did not hear her appeal, she has been deprived of her right to due process. In support of her position, Link cites *Landrigan v. McElroy,* 457 A.2d 1056 (R.I.1983); *Genereux v. Pelosi,* 96 R.I. 452, 192 A.2d 630 (1963); and *Carr v. Brown,* 20 R.I. 215, 38 A. 9 (1897). These cases, however, do not sustain Link's proposition, for Link was afforded a meaningful opportunity to defend herself at the hearing before the appeals panel. Indeed, the appeals panel's order indicates that Link's appeal was considered by a panel of four judges. Section 31–43–4(1), which provides for review by a three-judge appeals panel, requires nothing more.

■ Although this court is unpersuaded by Link's contentions about the form and content of the written order in this case, her objections illustrate the hazards of issuing stock decisions devoid of supportive reasoning. We are of the opinion that stock decisions should be avoided and that to ensure intelligent appellate review, decisions should "articulate adequately the[ir] factual foundations and legal reasoning." *Fitzpatrick v. Pare,* 552 A.2d 1185, 1186 (R.I.1989).

We now focus upon the primary issue propounded on appeal.

## III

At the AAC hearing, prior to the presentation of any evidence by either the state or Link, counsel for Link moved to dismiss the refusal charge. As grounds, he argued that because the law-enforcement report submitted to the Administrative Adjudication Division by the South Kingstown police incorrectly listed the $147 fee for refusing the breathalyzer test as $115, the report did not comport with § 31–27–2.1 and therefore required dismissal.

After listening to arguments from both parties, the hearing judge dismissed the charge. In doing so, she reasoned that past decisions of the District Court establish that the report required by § 31–27–2.1(a) must precisely disclose all the penalties that ac-

company refusal to submit to a breathalyzer test. Because the report at issue did not list the correct fee amount, she concluded that the charge had to be dismissed. In response, the state, pursuant to § 31–43–4(2), sought review of the decision by the appeals panel. The scope of the panel's review is delineated in § 31–43–4(6). Although we have not to date interpreted this provision, it appears substantively identical to G.L.1956 (1993 Reenactment) § 42–35–15(g), which delineates the standard for reviewing administrative agency decisions, and G.L.1956 (1991 Reenactment) § 45–24–20(d), as amended by P.L.1993, ch. 144, § 2, which presents the standard for reviewing zoning-board decisions. In determining the appeals panel's scope of review, therefore, we are guided by this court's pronouncements concerning § 42–35–15(g) and § 45–24–20(d).

▪ In reviewing a hearing judge's decision pursuant to § 31–43–4(6), the appeals panel lacks the authority to assess witness credibility or to substitute its judgment for that of the hearing judge concerning the weight of the evidence on questions of fact. *See Liberty Mutual Insurance Co. v. Janes,* 586 A.2d 536, 537 (R.I.1991). The review of the appeals panel is confined to a reading of the record to determine whether the judge's decision is supported by legally competent evidence or is affected by an error of law. Section 31–43–4(6). *See Environmental Scientific Corp. v. Durfee,* 621 A.2d 200, 208 (R.I.1993). In circumstances in which the appeals panel determines that the decision is "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record" or is affected by "error of law," it may remand, reverse, or modify the decision. Section 31–43–4(6)(d) and (e). *See Durfee,* 621 A.2d at 208. Otherwise, it must affirm the hearing judge's conclusions. Section 31–43–4(6). *See Janes,* 586 A.2d at 537.

▪ Our review of appeals panel judgments is authorized by § 31–43–4(10), and it must conform to the standards embodied in § 31–43–4(6). *See Durfee,* 621 A.2d at 208. This court, accordingly, must determine whether the appeals panel exceeded its authority under § 31–43–4(6). *See Sawyer v. Cozzolino,* 595 A.2d 242, 245 (R.I.1991). The

appeals panel's decision will not be reversed unless we decide the panel "misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *Brum v. Conley,* 572 A.2d 1332, 1335 (R.I.1990). Pursuant to this standard of review, we next examine the opinion of the appeals panel.

A

The appeal panel's decision provides, in pertinent part, as follows: "Based on the testimony presented, a review of the arguments on behalf of the motorist, and a review of the tape of the hearing, * * * the assistant attorney general['s] appeal [is allowed] and a new contested hearing * * * is granted." Although the decision clearly fails to enumerate the grounds upon which it is based, the record of the proceedings at the AAC hearing indicates that the only possible basis for the decision is misapplication of § 31–27–2.1 by the hearing judge.

The decisive issue in this case, therefore, is whether a charge of refusal to submit to a breathalyzer test is sustainable only when the hearing judge finds that the law-enforcement report required by § 31–27–2.1(a) precisely enumerates all penalties imposed for refusal.

▪ When interpreting a legislative enactment, this court's task is to establish and effectuate the legislative intent. *In re Advisory Opinion to the Governor,* 504 A.2d 456, 459 (R.I.1986). When the enactment's language is clear and unambiguous, the enactment must be applied literally and may not be extended or construed. *Pizza Hut of America, Inc. v. Pastore,* 519 A.2d 592, 593 (R.I.1987). In such circumstances, the words must be given their plain and ordinary meaning. *Trifari v. Employees' Retirement System of Providence,* 485 A.2d 100, 102 (R.I. 1984). Section 31–27–2.1 is clear and unambiguous and should therefore be applied literally. *See Levesque v. Rhode Island Department of Transportation,* 626 A.2d 1286, 1290 (R.I.1993).

## B

■ Application of § 31–27–2.1 to the facts of this case discloses that the AAC hearing judge committed an error of law when she dismissed the refusal charge against Link.

Section 31–27–2.1 can be divided into two distinct parts: prehearing procedure and hearing procedure. Subsection (a) deals with the prehearing procedure initiated by an arrested driver's refusal to submit to a chemical test. It empowers law-enforcement officers to prepare a sworn report and submit it to the AAC whenever a motorist arrested on suspicion of driving while intoxicated rejects the chemical test. Furthermore, it provides that when such a report fulfills the requirements set forth in § 31–27–2.1(a), the AAC must automatically suspend the license of the driver to whom reference is made in the report.[2] The role of the sworn report ends at this point.

Pursuant to subsection (b), a hearing may be necessary to determine whether a refusal charge should be sustained or dismissed. If such a hearing is held, subsection (b) permits the hearing judge to sustain the charge only upon finding that:

> "the law enforcement officer making the sworn report [pursuant to § 31–27–2.1(a) ] had reasonable grounds to believe that the arrested person had been driving a motor vehicle within * * * [Rhode Island] while under the influence of intoxicating liquor * * * or any controlled substance * * * and that said person while under arrest refused to submit to the [breathalyzer] test[ ] upon the request of a law enforcement officer, that the person had been informed of his rights in accordance with § 31–27–3, and that the person had been informed of the penalties incurred as a result of noncompliance with this section." Section 31–27–2.1(b).

Clearly, the requisite findings may be made based upon whatever evidence is adduced *at the hearing* and are not dependent upon the validity of the sworn report required by subsection (a). Subsection (b), moreover, does not require a hearing judge to find that the sworn report complied with § 31–27–2.1(a).

Therefore, the proper procedure under a literal application of § 31–27–2.1(b) would have provided the state an opportunity to establish the facts necessary under subsection (b) to sustain Link's breathalyzer refusal charge notwithstanding the defect in Officer Horoho's sworn report. However, the hearing judge, relying solely upon the sworn report, chose to dismiss the charge prior to taking any evidence, including the state's evidence that Link had in fact been informed of the correct fee. This constitutes an error of law.

This court has recognized the state's compelling interest in reducing the alarming number of accidents caused by impaired motorists. *See State v. Locke,* 418 A.2d 843, 850 (R.I.1980). In accomplishing this objective, the use of a breathalyzer test, the removal of apparently impaired drivers from the highways, and the procedure of imposing summary license suspension are justifiable means of achieving safer highways. *Id.* Likewise, in permitting the state to prove a refusal charge notwithstanding the listing of an incorrect fee on a police report, this compelling state interest is advanced.

Accordingly, the petition for certiorari is denied. The writ previously issued is hereby quashed, and the order reversing the AAC hearing judge and remanding the case for a new hearing is affirmed. The papers in the case are remanded to the AAC with our decision endorsed thereon.

FAY, C.J., did not participate.

---

2. We have upheld the constitutionality of summary license suspension pursuant to G.L.1956 (1982 Reenactment) § 31–27–2.1(a), as amended by P.L.1990, ch. 329, § 1. *Levesque v. Rhode Island Department of Transportation,* 626 A.2d 1286, 1290 (R.I.1993).